IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS, NEW CINGULAR WIRELESS PCS, LLC, SPRINT SPECTRUM L.P., and OMNIPOINT COMMUNICATIONS, INC. a wholly owned subsidiary of T-MOBILE USA, INC., <br><br>         Plaintiffs, <br><br> v. <br><br> TOWN OF CLARKSTOWN, and THE TOWN BOARD OF THE TOWN OF CLARKSTOWN, <br><br>         Defendants. | **AFFIDAVIT OF JOHN E. BARRY IN SUPPORT OF COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No. _____ |

John E. Barry, being duly sworn, deposes and says:

1.    I am a partner of the firm Wiley Rein LLP, which represents Plaintiff New York SMSA Limited Partnership, d/b/a Verizon Wireless ("Verizon Wireless") in the above-captioned matter.

2.    I respectfully submit this affidavit in support of the complaint of Verizon Wireless, New Cingular Wireless PCS, LLC, Sprint Spectrum L.P, and Omnipoint Communications, Inc., a wholly owned subsidiary of T-Mobile USA, by and through their respective attorneys, against Defendant Town of Clarkstown, New York and the Town Board of the Town of Clarkstown.

3.    A true and correct copy of Chapter 251 of the Clarkstown Town Code, as amended by Local Law No. 14 of the year 2007, enacted July 26, 2007 and entitled "A Local Law to Amend Chapter 251 (Wireless Communications Facilities) of the Town Code of the Town of Clarkstown" is annexed to this Affidavit as Exhibit A.

John E. Barry (JB1776)

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
Tel.: 202.719.7000
Fax: 202.719.7049

**Attorney for Plaintiff**
**New York SMSA Limited**
**Partnership d/b/a**
**Verizon Wireless**

Sworn to before me this
_27th_ day of August, 2007

Notary Public

Larry E. Jefferson
Notary Public, District of Columbia
My Commission Expires 1/14/2012

My commission expires: _____

2

**Local Law Filing**

NEW YORK STATE DEPARTMENT OF STATE
41 STATE STREET, ALBANY, NY 12231

(Use this form to file a local law with the Secretary of State.)

Text of law should be given as amended.  Do not include matter being eliminated and do not use italics or underlining to indicate new matter.

County
City
Town of _____ CLARKSTOWN _____
Village

Local Law No. ____14_____   of the year _2007_

A local law entitled, "A LOCAL LAW TO AMEND CHAPTER 251

(Insert title)

(WIRELESS COMMUNICATIONS FACILTIES) OF

THE TOWN CODE OF  THE TOWN OF CLARKSTOWN"

Be it enacted by the _____ TOWN BOARD _____ of the

(Name of Legislative Body)

County
City
Town of _____ CLARKSTOWN _____ as follows:
Village

See attached 27 pages.

(If additional space is needed, attach pages the same size as this sheet, and number each.)

(1)

DOS-239(Rev.11/99)

**Exhibit A**

**(Complete the certification in the paragraph that applies to the filing of this local law and strike out that which is not applicable.**

1.  **(Final adopted by local legislative body only.)**

I hereby certify that the local law annexed hereto, designated as local law No. __14__ of __2007__ of the (County)(City)(Town)(Village) of _____CLARKSTOWN_____ duly passed by the __TOWN BOARD__ on __July 24_____ , __2007__ , in accordance with applicable provisions of law.
(Name of legislative body)

2.  **(Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective Chief Executive Order*.)**

I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____20_____, and was (approved)(not approved)
(Name of Legislative Body)
(repassed after disapproval) by the _____ and was deemed duly adopted
(Elective Chief Executive Officer*)
on _____20_____ , in accordance with the applicable provisions of law.

3.  **(Final adoption by referendum.)**

I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____20_____, and was (approved) (not approved)(repassed
(Name of Legislative Body)
after disapproval) by the _____. Such local law was submitted
(Elective Chief Executive Officer*)
to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on _____20___ , in accordance with applicable provisions of law.

4.  **(Subject to permissive referendum and final adoption because no valid petition was filed requesting referendum.)**

I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____20 , and was (approved)(not approved) repassed after
(Name of Legislative Body)
disapproval) by the _____ on _____ , 20_____.
(Elective Chief Executive Officer*)
Such local law was subject to permissive referendum and no valid petition requesting such referendum was filed as of _____ 20_____ , in accordance with the applicable provisions of law.

_____

*  **Elective Chief Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested with the power to approve or veto local laws or ordinances.**

(2)

5.    (City local law concerning Charter revision proposed by petition.)

I hereby certify that the local law annexed hereto, designated as local law    No. _____
of 20_____ of the City of _____ having been submitted to referendum pursuant
to the provisions of section (36)(37) of the Municipal Home Rule Law, and having received
the affirmative vote of a majority of the    qualified electors of such city voting
thereon at the (special)(general) election held on _____, 20____, became
operative.


6.    (County local law concerning adoption of Charter.)

I hereby certify that the local law annexed hereto, designated as local law    No. _____
of 20____ of the County of _____, State of New York, having been submitted to
the electors at the General Election of November _____, 20_____, pursuant to
subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law, and having received
the affirmative vote of a majority of the qualified electors of the cities of said county
as a unit and a majority of the qualified electors of the towns of said county considered
as a unit voting at said general election, became operative.

(If any other authorized form of final adoption has been followed, please provide an
appropriate certification.)

I further hereby certify that I have compared the preceding local law with the original
on file in this office and that the same is a correct transcript therefrom and of the
whole of such original local law, and was finally adopted in the manner indicated in
paragraph    1   , above.

                                        Town Clerk
                                        David Carlucci

(Seal)                    Date: _____7/26/07_____

_____

(Certification to be executed by County Attorney, Corporation Counsel, Town Attorney,
Village Attorney or other authorized attorney of locality.)

STATE OF NEW YORK
COUNTY OF   ROCKLAND

I, the undersigned, hereby certify that the foregoing local law contains the correct text
and that all proper proceedings have been had or taken for the enactment of the local law
annexed hereto.

_____
Signature

AMY MELE, TOWN ATTORNEY
Title

County
City
Town of    CLARKSTOWN
Village


Date: _____7/25/07_____

CHAPTER 251 IS APPLICABLE TO ALL WIRELESS TELECOMMUNICATIONS FACILITIES (WTFs), PROPOSED AND EXISTING, LOCATED WITHIN THE TOWN.  IT SHOULD BE NOTED, HOWEVER, THAT WTFS THAT EXIST OR ARE PROPOSED ON CERTAIN PROPERTIES WITHIN THE TOWN, INCLUDING PROPERTIES OWNED BY THE TOWN, ROCKLAND COUNTY, OR A STATE AGENCY, MAY BE EXEMPT FROM MUNICIPAL REVIEW.  NOTE – DEFINITIONS OF WIRELESS TERMS ARE INCLUDED IN SECTION 251-42.

## § 251-10.  Background and Legislative Intent

A.  This Chapter is to be known as the Wireless Telecommunications Facilities Law.

B.  The purpose of this Chapter is to provide the Town of Clarkstown the authority to accommodate and regulate necessary utility infrastructure for the provision of wireless telecommunication facilities within the Town in a fair and consistent manner in accordance with Federal and State laws, to encourage the siting of wireless telecommunication facilities in nonresidential areas on existing structures, to address the safety, visual and aesthetic aspects of wireless telecommunication facilities and to provide for public input in the process of siting wireless telecommunication antenna towers.  The purpose of this Chapter is also to establish clear standards for the review and siting of wireless telecommunications facilities.

C.  The Town Board finds the regulation of wireless communication facilities is necessary to protect the predominantly suburban residential character of the Town and the property values of the community.  Such regulation is needed to protect the character of schools, parks, churches, playgrounds, historic districts, sites and structures; to preserve scenic areas; to minimize aesthetic impacts; to preserve the health and safety of residents; and to respect the need of wireless telecommunication service providers to relay signals without electronic interference from other service providers' operations, while not unreasonably limiting competition among them.

D.  The Town Board declares that the protection of residential areas of the Town from the proliferation of unsightly and otherwise intrusive wireless telecommunication facilities to be of paramount importance and that any local regulations of wireless telecommunication facilities must furnish all possible protection for residential areas and further declares that the provisions of this Chapter are to be interpreted to favor protection of residential areas.  The Planning Board shall, before issuing a special permit for a wireless telecommunication facility in a residentially zoned area, satisfy itself that all other alternatives have been exhausted.

E.  In general, consolidations, shared use and co-location of antenna and antenna-mounting structures is preferred to the construction of new facilities. The use of alternate technology, including but not limited to, distributed antenna systems (DAS) and microcells, is declared to be preferred over conventional tower sites.

F.  Congress adopted the Telecommunications Act of 1996 (hereinafter, the "TCA") in order to encourage the national use and development of telecommunications and wireless communications.

G.  The TCA has had a significant effect on the deployment of telecommunications and wireless services.

H.  The TCA preempts certain State, local laws and regulations, but reserves some authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction and modification of wireless telecommunications facilities.

I.  The TCA contains provisions which affect State and local taxation, land use, zoning, public rights-of-way, and general police power.

*Adopted 9/24/07*

J.  Developments in telecommunications and wireless technology and regulatory actions by the Federal Communications Commission (hereinafter, the "FCC) have resulted in the deployment and proposed deployment of new and changing wireless telecommunications networks throughout New York State, the County of Rockland and the Town.

K.  Significantly increased demands for wireless communication capacity and other developments in telecommunications and wireless technology, as well as regulatory actions by the FCC will likely place additional and continuing demands on the used of the Town's public rights-of-way, public property and private property.

L.  Prior to enactment of amendments to this Chapter in 2007, this Chapter contained limited provisions regulating the processing, approval and construction of wireless communication facilities in the Town.

M.  The Town first enacted this Chapter in 1997, and it had not been revised, changed, updated or amended for the past approximately nine (9) years.

N.  It has become apparent, based on intervening and rapid changes in technologies, FCC regulatory actions and from applications filed with the Town for such facilities, that prior to enactment of amendments to this Chapter in 2007, the wireless telecommunications facilities law did not adequately address, in a comprehensive plan or fashion, the impact of new and emerging technological changes and developments upon the Town's local zoning, powers and interests.

O.  In addition, despite efforts for shared used and co-location of facilities, the threat exists for the proliferation of facilities in residential areas which may alter the residential character of those areas.

P.  In 2006 the Town issued a moratorium pursuant to FCC guidelines for the purpose of studying and reviewing issues concerning the current and anticipated deployment and siting of wireless communications facilities in the Town, and related issues and concerns.

Q.  The Town commissioned a study to formulate, in consultation with the Town and its professional staff, a wireless telecommunications siting plan. The amendments to the Wireless Telecommunications Facilities Law are intended to adopt and implement those aspects of the plan which the Town Board, following public hearings and opportunities for comment by the telecommunications industry, has determined to approve.

R.  The Town is concerned about the potential proliferation of wireless telecommunication facilities throughout the Town and the potential cumulative impact of these facilities on its landscape and character.

S.  The goals of the amendments to the Wireless Telecommunications Facilities Law which are being enacted are to develop a process for consistently and fairly evaluating proposed sites for locating wireless telecommunications facilities (WTFs), and to determine how future WTFs can be constructed so that they present the least impact cumulatively as possible which still rendering reliable service.

T.  The amendments are, in part, the result of an evaluation of existing WTFs within the Town; coverage maps associated with WTFs located in and around the Town; and land uses. Siting criteria such as topography, proximity to residential areas and sensitive receptors, and possibility of co-location were identified.

U.  The Town has determined that effective means of consistently and fairly evaluating proposed WTF sites while at the same time evaluating the cumulative effects of site applications are:

(1)  To create an antenna advisory Board whose sole responsibilities shall be to monitor developments in wireless telecommunications, including new technologies and changes in capacity requirements, monitor the cumulative effects of WTFs upon the landscape and character of the Town, and to advise the Planning Board concerning individual WTF

site applications, including the aesthetic aspects of proposed facilities, the identification of potential alternate sites that may be considered, and other items;

(2)    To vest the Planning Board with the authority to rule upon special permit applications for WTFs, as well as related matters;

(3)    To require applicants for such special permits to provide the Planning Board with sufficient data and information to allow it to render and informed decision upon applications;

(4)    To promulgate a preliminary site screening tool to assist the Planning Board in evaluating future applications for WTFs on a consistent and fair basis. This will be achieved by the use of a preliminary screening matrix (Table 1) as described in 251-14 and 251-15. The matrix identifies site categories for proposed wireless facilities, based on the nature of the applications and eleven (11) evaluation criteria which the Town hereby declares to be important indicators of whether the application should be approved; and.

(5)    To promote and encourage comprehensive consideration and understanding of the potential impacts associated with each WTF application, including at a pre-application stage, and potential mitigation measures and alternative technologies that could be implemented to minimize adverse effects on the community. Proposed mitigation would include the use of "stealth" technology, alternative technology, and/or landscaping and other approaches such as co-location. Proposed alternative technology includes the deployments of distributed antenna systems (DAS) or microcells that are smaller in physical dimensions and that can be mounted on existing utility poles or other structures at relatively low elevations. DAS has been used successfully in many areas of the U.S. as a means to provide additional coverage or capacity in lieu of conventional cell towers.

V. The Town has further determined that Town-owned property will undergo internal review outside of the permitting process before any wireless telecommunications facilities will be allowed to be placed thereon, and that accordingly Town-owned property shall be exempt from the special permit process.

## § 251-11. Statutory Authority, Jurisdiction, Exemption of Town-Owned Property; Non-Residential Antennas on Existing Structures.

A. This Chapter is hereby enacted pursuant to the provisions of § 10 of the Municipal Home Rule Law.

B. The authority to issue special permits as provided in this Chapter is hereby delegated by the Town Board to the Planning Board of the Town of Clarkstown.

C. Reference herein to the several zoning districts are references to such districts as described in Chapter 290 of the Clarkstown Code concerning zoning.

D. Wireless telecommunications facilities upon Town owned property where the Town Board has approved a contract, agreement or determination to place such facility on such property shall be exempt from this Chapter. However, such facility shall still be requires to obtain building permits to the extent applicable.

E. The location of antennas upon an existing water tank, power line, rooftop or any other existing structure (as defined in 251-42) in non-residentially zoned areas, or the co-location of antennas on an existing, approved wireless telecommunications facility structure (i.e., monopole, tower) that does not involved a height increase of greater than 50% to the existing facility's height, may be approved by the Building Inspector upon compliance with the following and all other applicable sections of this Chapter, and shall thereupon not require a Special Permit and shall not be subject to the screening process set forth in section 251-15, et seq., but shall be subject to the fees set forth in Section 251-40:

2701719ab107b069

(1)    The existing facility or structure, complies with the provisions of all other provisions of law outside of this Chapter, including but not limited to all applicable zoning restrictions, height restrictions, and building permit requirements, if any;

(2)    The existing antenna facility, if any, complies with the provisions of this Chapter;

(3)    To the extent antennas are being collocated, the consolidated, shared or co-used antenna facility complies with the conditions set forth in this Chapter;

(4)    The proposed equipment and installation would not exceed the structural capacity of the existing facility or structure, including but not limited to any existing antenna mounting structure;

(5)    The Building Inspector reserves the right to refer proposals to the Architectural Landscape Commission (ALC) for review of and comment on aesthetic issues in accordance with the Town Code;

(6)    For proposals involving a height increase to an existing approved WTF where the overall facility height is proposed to be increased to over 120 ft above grade, the Building Inspector reserves the right to refer the proposal to the Planning Board for review; and

(7)    The proposed equipment will not cause interference with existing equipment.

## § 251-12.  Procedures; Planning Board and Antenna Advisory Board

A.  With respect to this application process, the Planning Board shall designate itself as the lead agency, pursuant to SEQRA, unless otherwise provided by SEQRA or other applicable law.  The Board shall conduct an environmental review of the proposed project in combination with its review of the application under this Chapter.

B.  There shall be an Antenna Advisory Board consisting of five (5) members.  Its individual members shall be appointed or removed by the Town Board.  It shall serve in an advisory capacity only.  The Antenna Advisory Board's responsibilities shall be to monitor developments in wireless telecommunications, including new technologies and changes in capacity requirements, monitor the cumulative effects of WTFs upon the landscape and character of the Town, and to advise the Planning Board concerning individual WTF site applications.  If requested by the Planning Board, the Antenna Advisory Board may perform an advisory review of aesthetic aspects of proposed sites, assist with preliminary screening by the Planning Board to determine site category as set forth in this Chapter, comment on possible alternate that may be considered, or assist with other review items.  The alternate sites may include the following:  County-owned property; State-owned property; existing structures (such as water tanks or electrical transmission towers); Town-owned property; property owned by utilities; existing wireless telecommunication facilities; the use of alternate technology; or other alternatives.  Antenna Advisory Board feedback regarding alternate sites may be incorporated into the alternate site analysis (refer to Section 251-19) requires for some site categories.

C.  Individual WTF site applications reviewed by the Antenna Advisory Board will not require Technical Advisory Committee Review.

## § 251-13.    Pre-Application

A pre-application for a special use permit for a wireless telecommunications facility (one (1) original and eight (8) copies) shall be submitted to the Planning Board and signed on behalf of the applicant by the

person preparing the same and with knowledge of the contents and representations made therein and attesting to the truth and completeness of the information.  The landowner, if different than the applicant, shall also sign the pre-application

A.  The applicant shall include the following pre-application information:

    (1)  A statement in writing that the construction of the wireless telecommunications facility is legally permissible.

    (2)  Name, address and phone numbers of the person preparing the pre-application information.

    (3)  Names, addresses and phone numbers of the property owner, and applicant.

    (4)  Postal address and tax map parcel number of the property.

    (5)  Zoning district or designation in which the property is situated.

    (6)  USGS or topographic map with proposed site location indicated.

    (7)  Size of the property stated both in square feet and lot line dimensions, and a diagram showing the location of all lot lines, and the proposed wireless facility.

    (8)  Location, size and height of all existing structures on the property.

    (9)  Location, size and height of all proposed and existing antennas, and all appurtenant structures (including new tower or pole structures and ground-based equipment).

    (10)  The number, type and design of the antenna(s) proposed.

    (11)  Structural certification letter signed by N.Y. State Professional Engineer.

    (12)  Signal propogation or coverage maps showing (a) the existing facilities around the proposed site, and (b) the in-vehicle coverage model for the proposed facility (including a map showing estimated coverage at -84 dBm or lower).

    (13)  A bulk table listing all proposed equipment measurements.

B.  Within five (5) business days of receipt of the pre-application information, the Planning Board shall mail to each of the Antenna Advisory Board members one (1) copy of the pre-application information. The Planning Board, with the input and recommendation of the Antenna Advisory Board, shall make a determination of completeness or incompleteness with respect to the pre-application, and shall provide the applicant with the reasons for the determination of incompleteness, within thirty (30) days from the date of filing of the pre-application.

    (1)  If the Antenna Advisory Board determines to recommend to the Planning Board that it deem the pre-application incomplete, it shall notify the applicant of such recommendation within five (5) days of its determination.  The applicant may then supplement its pre-application.

    (2)  If the pre-application is deemed incomplete by the Planning Board the applicant may either amend its pre-application information to contain the material necessary for acceptance within thirty (30) days of receiving the Planning Board's Notice of Incompleteness, or withdraw its pre-application.  Any challenge in court to a determination of incompleteness must be made under the procedures set forth in Article 78 of the Civil Practice Law and Rules within thirty (30) days of the date the applicant is provided notice of such determination.

(3)   If the pre-application is deemed complete by the Planning Board, the Planning Board will conduct preliminary screening of the proposed WTF as described below in Section 251-14.

(4)   A determination that a pre-application is complete shall not be deemed as a determination that the applicant has provided full and accurate information, and shall not preclude the Planning Board from requiring the applicant to provide more detailed, corrected, or other information at later stages during the application and permit process. No application shall be deemed complete unless and until the pre-application and preliminary screening process has been deemed complete by the Planning Board and until there has been full and complete compliance with the New York State Environmental Quality Review Act (SEQRA).

## § 251-14.   Preliminary Screening

A.   A preliminary site screening tool is developed to assist the Planning Board in evaluating future applications received for WTFs. This evaluation tool provides a scoring matrix to assess proposed sites on a consistent basis. The matrix identifies site categories for proposed wireless facilities, based on the nature of the application and eleven (11) evaluation criteria. The matrix screening tool is included as Table 1.

B.   The screening evaluation criteria include:

- Area use information. Related to distance from proposed facility.
- Potential impacts on public assembly locations (e.g., schools, day care facilities) related to distance from proposed facility.
- Potential impacts on special areas (e.g., historic landmarks, recreation areas, ect.) related to distance from proposed facility.
- Installation type.
- Stealthing proposed.
- Co-location potential.
- Height requirement as per Chapter 251.
- Property set-back and distance requirements of Town Code.
- Fall zone 1.5 times or greater of height of proposed structure.
- Landscaping.
- Other potential impacts (e.g., property values, or other specific aesthetic and safety issues).

## § 251-15.   Evaluation of Preliminary Screening Process

A.   The preliminary site screening tool, along with the pre-application information submitted by the applicant to the Planning Board, will be used by the Planning Board (with feedback from the Antenna Advisory Board) to assign a category for the proposed wireless telecommunications facility. One of the following categories will be assigned:

**A** –   Use of preferred alternate technology (DAS, microcells) with screening value of 60 or greater; location on existing O&R tower/substation with screening value greater than 90;

location on existing water tower with screening value greater than 90; proposed co-location at existing WTF or rooftop site with screening value greater than 105.

**B** – Screening value of 80 or greater.

**C** – Screening value of 50 – 79.

**D** – Screening value of less than 50.

B. The Planning Board with the input and advice of the Antenna Advisory Board and the Planning Department shall perform pre-screening of the application by utilizing the preliminary site screening tool. The preliminary screening will be completed by the Planning Board within forty-five (45) days from the date the pre-application information is filed. The Planning Board shall notify the applicant in writing that the pre-application information has been reviewed and screened, and inform the applicant of the results of the preliminary screening and site category designation.

C. The Planning Board shall advise the applicant as to the site category: Category A: needing Planning Board approval on the aesthetic considerations, or Category B, C, or D: an application is required for a special use permit from the Planning Board. This shall be in addition to any necessary applications under the zoning law for a variance, which shall be made to the Zoning Board of Appeals or the Town Board, as directed in such zoning law.

## § 251-16.    Category A Sites

A. On *Category A* applications, the Planning Board shall notify the applicant of any visual or aesthetic conditions identified by the Planning Board, with input and advice from the Antenna Advisory Board and Planning Department. The Planning Board will thereupon treat the pre-application as an application, and within fourteen (14) business days from the date that the Category A designation is assigned, inform the applicant of the date, time and place when a public hearing will be held by the Planning Board regarding the application and any conditions which should be placed on the Category A site permit.

B. Following such hearing, the Planning Board shall within fourteen (14) days fix visual or aesthetic conditions which shall apply to the application. Upon submission of approved plans and certifications, the Building Inspector shall thereupon issue a Category A site permit containing such conditions.

C. All antenna installations, including Category A sites, shall require the submission of nine (9) copies of a fully completed building permit application to the Building Inspector for each antenna installation and/or location, who shall accept the application and copies.

## § 251-17.    Category B, C, and D Sites

A. If a special use permit (Category B, C, or D site) is required, the applicant shall submit twenty (20) copies of the special permit application to the Planning Board within sixty (60) days from the date the Planning Board determines the site category. The contents of the application will be as described in Section 251-19 for the specific site category. The application materials will be distributed among the Planning Board, the Antenna Advisory Board and other relevant agencies or representatives of the Town, and County and State agencies as applicable.

B. With the input and advice of the Antenna Advisory Board and Planning Department, the Planning Board shall within thirty (30) days from the date the application was filed, inform the applicant whether the application is complete with respect to the requirements set forth in Sections 251-18 and 19.

C. Any challenge in court to a site category determination must be made under the procedures set forth in Article 78 of the Civil Practice Law and Rules and within thirty (30) days of the date the applicant is provided notice of such determination.

D. A determination that an application is complete shall not be deemed as a determination that the applicant has provided full and accurate information, and shall not preclude the Planning Board from requiring the applicant to provide more detailed, corrected, or other information at later stages during the application review process.

E. In the event the applicant, after receiving notification of a site category determination, or before such notification, wishes to seek a higher score on the preliminary site screening tool, the applicant may submit an amended pre-application containing mitigation measures, superceding its prior pre-application. The amended pre-application shall be deemed a new pre-application, except that fees paid and submissions made upon the prior pre-application shall be deemed to apply to the amended pre-application. Fees associated with the amended pre-application shall be applied as per Section 251-40.

## § 251-18.    Procedures For Category B, C, and D Sites

A. The Planning Board is hereby authorized to issue a special permit under the provisions of this Chapter subject to all of the special requirements and conditions herein and any requirements which may be made a part hereof, except that if the Planning Board determines that the interests of this Chapter would otherwise be satisfied, the Planning Board may in its discretion, but shall not be required to, deem individual requirements and conditions satisfied by issuing a waiver or relaxation in relation thereto. Any waiver or relaxation may only be made in the event that the requirements and conditions for which a waiver or relaxation is made are found not to be requisite in the interest of public health, safety or general welfare, and may only be exercised in the event that the Planning Board, in issuing a waiver or relaxation, makes specific findings that (i) the interests of this Chapter would otherwise be satisfied, (ii) the waiver or relaxation is reasonably necessary for the provision of wireless communications services consistent with the interests of both this Chapter and the TCA, and (iii) the applicant has taken all reasonably available mitigation measures. Every special permit shall also conform to all special findings that are specified herein.

B. Prior to or concurrent with the filing of a formal application to the Planning Board to obtain a special permit under this Chapter, the applicant shall submit information needed to meet the requirements of the New York State Environmental Quality Review Act (SEQRA) to the Town Department of Environmental Control acting as technical staff to the Planning Board, which will make recommendations to the Planning Board, which Board shall determine whether the requirements of SEQRA have been met. The Planning Board may hold a joint public hearing under the provisions of SEQRA and this Chapter whenever practicable. In the event that a final SEQRA determination has not been made, no application for a special permit under this Chapter shall be granted.

C. The Planning Board shall hold a public hearing on due notice within sixty-two (62) days after submission of a formal completed application, including such technical information from the applicant as may be required by the Planning Board for a special permit under the provisions of this Chapter.

   (1)    Notice of the public hearing shall be by publication in the official newspaper of the Town at least ten (10) days in advance of the hearing.

   (2)    The hearing notice shall indicate that the application may be examined and further information is available from the Planning Board office during regular business hours.

   (3)    Copies of the publication order shall be mailed by the applicant to the owners of property within 1000 feet of the property which is the subject of the application, and an affidavit of service thereof shall be filed with the Planning Board due on or before the date of the

hearing.  Failure to mail such notice or failure of any addressee to receive such notice shall not in any manner affect the jurisdiction of the Planning Board or any action taken on the application.

D.  The Planning Board may approve, approve with conditions or disapprove the application for a special permit under the provisions of this Chapter within sixty-two (62) days after a public hearing.

E.  The decision shall be made at a meeting of the Planning Board with a quorum present and not less than a majority of the total membership voting "aye" on the resolution.

F.  In rendering its decision, the Planning Board shall consider the application's category and score reflected in the preliminary site screening tool, as well as all evidence presented to it and made part of the record.

G.  In the event that the Rockland County Planning Commissioner has recommended against the application or imposed conditions, the Planning Board may approve only with a majority plus one of the total membership and must state its reasons for overriding the Rockland County Planning Commissioner in the approval resolution pursuant to the requirements of Section 239-m of the General Municipal Law.

H.  The period in which the Board may take action may be extended with the consent of the applicant.

## § 251-19.    Application Requirements for Category B, C, and D Sites

A.  All applicants for a special use permit for Category B, C, and D wireless telecommunications facilities, or any modification of such facility, shall comply with the requirements set forth in this section.  The Planning Board is the officially designated agency or body of the community to whom applications for a special use permit for wireless telecommunications facilities must be made, and that is authorized to review, analyze, evaluate and make decisions with respect to granting or not granting, recertifying or not recertifying, or revoking special use permits for wireless telecommunications facilities.  The Planning Board may at its discretion delegate or designate other official agencies of the Town to accept, review, analyze, evaluate and make recommendations to the Planning Board with respect to the granting or not granting, recertifying or not recertifying or revoking special use permits for wireless telecommunications facilities.

B.  An application for a special use permit for wireless telecommunications facilities shall be signed on behalf of the applicant by the person preparing the same and with knowledge of the contents and representations made therein and attesting to the truth and completeness of the information.  The landowner, if different than the applicant, shall also sign the application.  At the discretion of the Board, any false or misleading statement in the application may subject the applicant to denial of the application without further consideration or opportunity for correction.

C.  Applications not meeting the requirements stated herein, or which are otherwise incomplete, may be rejected by the Planning Board.

D.  The applicant shall include a statement in writing that:

(1)  The applicant's proposed wireless telecommunications facilities shall be maintained in a safe manner and in compliance with all conditions of the special use permit, without exception, unless specifically granted relief by the Board in writing, as well as all applicable and permissible local codes, ordinances and regulations, including any and all applicable County, State and Federal laws, rules and regulations.

(2)  The construction of the wireless telecommunications facilities is legally permissible, including but not limited to the fact that the applicant is authorized to do business in New York State.

E.      No wireless telecommunications facilities shall be installed or constructed until a site plan is reviewed and approved by the Planning Board and the special use permit has been issued. A building permit is required prior to the construction of any wireless facility.

F.      All applications for the construction or installation of new wireless telecommunications facilities shall be accompanied by a report containing the information hereinafter set forth. The report shall be signed by a licensed Professional Engineer registered in the State. Where this section calls for certification, such certification shall be by a qualified New York State licensed Professional Engineer, unless otherwise noted or approved by the Planning Board. The application shall include, in addition to the other requirements for the special use permit, the following information:

(1)      The location, height, number of antennas, type of installations (tower, rooftop, ect.), and operation's characteristics of all existing facilities of the applicant in and within one mile of the Town.

(2)      A two- to five-year plan for the provision of additional facilities in and immediately adjacent to the Town, indicating whether each proposed facility is for initial coverage or capacity building purposes, showing proposed general locations or areas in which additional facilities are expected to be needed. Subsequent applications will confirm or modify the facility service plan, so that the Planning Board may be kept up to date on future activities.

(3)      A commitment to co-locate or allow co-location wherever possible on all existing and proposed facilities.

(4)      Documentation that demonstrates the need for the wireless telecommunications facility to provide service.

(5)      Name, address and phone number of the person preparing the report.

(6)      Name, address and phone number of the property owner, operator and applicant, to include the legal form of the applicant.

(7)      A description of existing site use.

(8)      Postal address and tax map parcel number of the property.

(9)      Zoning district or designation in which the property is situated.

(10)     Size of the property stated both in square feet and lot line dimensions, and a diagram showing the location of all lot lines.

(11)     A site survey depicting existing topography, buildings, and other site features (including easements and utilities), and proposed facilities.

(12)     Location of nearest residential structure and location of nearest public assembly location.

(13)     Location, size and height of all proposed and existing antennas and all appurtenant structures.

(14)     Type, locations and dimensions of all proposed and existing landscaping (including proposed tree removal, if any), drainage patterns and controls, fencing.

(15)     The number, type and design of the antennas proposed.

(16)     The make, model and manufacturer of the tower and antenna(s).

(17)  A description of the proposed tower and antenna(s) and all related fixtures, structures, appurtenances and apparatus, including height above preexisting grade, materials, color and lighting. Zoning and construction drawings with plan view, cross-section elevations, and details on the antennas, support structure, and equipment cabinets and other ancillary equipment shall be provided.

(18)  The applicant shall, in a manner approved by the Board, demonstrate and provide in writing and/or by drawing how it shall effectively screen from view its proposed wireless telecommunications facility so as to mitigate potential visual impacts, including the base and all related equipment. Effective screening shall not require total screening to the extent that potential visual impacts are sufficiently mitigated. Examples of stealth technology and camouflage techniques include, but are not limited to, the design of a facility as an artificial tree or flagpole not substantially greater in height than a surrounding stand of like trees within which the facility will be located, comparatively small antenna (microcells or DAS) attached to traffic-related structures not changing the overall appearance of such structures, a small base station facility (e.g., cell site on wheels) placed in center median of a highway, a facility resembling a traffic structure, the incorporation of a facility on electrical transmission facilities, the design of a facility as an aesthetically pleasing structure suitable for a particular area, such as a clock tower, light pole, and the use of the smallest technically feasible antenna array. Information obtained from venders of such stealth technology and mitigation techniques, including examples of existing WTFs where the technology has been utilized, shall be submitted to the Board.

(19)  The frequency, modulation and class of service of radio or other transmitting equipment.

(20)  Transmission and maximum effective radiated power of the antenna(s).

(21)  Azimuth directions of antenna sectors and associated radiation patterns of the antenna(s).

(22)  Applicant's proposed tower maintenance and inspection procedures.

(23)  Certification that Non-Ionizing Electromagnetic Radiation (NIER) levels at the proposed site will be within the threshold levels adopted by the FCC. Cumulative Radio Frequency (RF) calculations shall be submitted for the proposed and any pre-existing antennas, for ground level exposure points. The methods, calculations, and assumptions for the certification shall be provided in a RF report, and as described in Sections 251-23 and 24.

(24)  Certification that the proposed antenna(s) will not cause interference with existing telecommunications devices.

(25)  A copy of the FCC license applicable for the use of wireless telecommunications facilities.

(26)  Certification that a structural analysis has been conducted. The basis for the calculations of the proposed tower's (or existing structure's) capacity to accommodate the proposed equipment and any pre-existing wireless telecommunications facility's equipment shall also be provided. If the wireless facility is subsequently approved and constructed, as-built certification indicating that the facility has been constructed in accordance with all standards shall be furnished prior to the Town issuance of any certificate of occupancy or compliance.

(27)  Propagation studies of the proposed site and all adjoining proposed or existing sites. The in-vehicle model threshold shall be used to generate the coverage maps, and a description of the methods and computer software used to generate the coverage maps shall be provided.

(28)  Correspondence shall be submitted to the New York State Office of Parks, Recreation and Historic Preservation - Historic Preservation Office (SHPO) and New York State Department of Environmental Conservation (NYSDEC), Division of Fish, Wildlife and Marine Resources - Natural Heritage Program describing the proposed facility and requesting comment. The applicant shall provide copies of comments and other correspondence sent to and received from these agencies with regard to the proposed facility.

G.  For Category C and D sites, the applicant shall be required to submit additional information as described below.

(1)  A written report demonstrating efforts to secure shared use of existing telecommunications tower(s) or use of existing buildings or other structures within the Town. Copies of written requests and responses for shared use shall be provided to the Planning Board.

(2)  The applicant shall furnish a structural analysis and written certification that the telecommunications facility, foundation and attachments are designed and will be constructed (as-built) to meet all local, County, State and Federal structural requirements for loads, including wind and ice loads (TIA-222F). If the wireless facility is subsequently approved and constructed, similar as-built certification indicating that the facility has been constructed in accordance with all standards shall be furnished prior to the Town issuance of any certificate of occupancy or compliance.

(3)  Coverage information. For Category C and D sites, in-building and open space coverage maps shall also be submitted for proposed and adjoining sites. For Category D sites, drive test data for the proposed facility along with adjoining sites shall be submitted. The drive test data shall include a description of the methods and instrumentation used, and the Planning Board shall be notified of the proposed schedule of the drive testing if the studies are to be conducted subsequent to the application being submitted.

(4)  The applicant shall submit a completed full Environmental Assessment Form (EAF) and a completed visual EAF Addendum. Photographs of existing site conditions at and in the vicinity of the proposed location, and photographic renderings of the proposed installation shall be prepared from various vantage points, including but not limited to parks and recreation areas; historic districts; and residential areas. A 50 mm lens (or comparable equipment) to simulate views and perspectives shall be utilized, and a description of the methods, equipment, and software used for the visual analysis shall be provided. Based on the results of the visual EAF Addendum, the Planning Board may require submission of a more detailed visual analysis.

(5)  If required by the Planning Board a crane or balloon test shall be performed to supplement the visual assessment of the proposed facility. The crane test shall be the preferred method to insure that the proposed height of the WTF is not altered by wind or adverse weather conditions. The applicant shall arrange to fly, or raise upon a temporary mast, a minimum of a three-foot diameter brightly colored balloon at the maximum height of the proposed new tower. The dates, (including a second date in case of poor visibility on the initial date) times and location of this balloon test shall be advertised twice by the applicant, seven (7) and fourteen (14) days in advance of the test date, in one of the official newspapers in the Town. The applicant shall inform the Board, in writing, of the dates and times of the test at least fourteen (14) days in advance. The balloon shall be flown for at least eight (8) consecutive hours sometime between 7:00 a.m. and 4:00 p.m. of the dates chosen. The primary date shall be on a weekend, but the second date, in case of poor visibility on the initial date, may be on a weekday.

(6)  For Category D sites, a visual influence analysis shall be prepared and submitted as a supplement to the visual EAF Addendum. The visual influence analysis shall include a

zone of visibility map which shall be provided in order to determine locations from where the proposed wireless facility may be seen. The map shall include topography and land uses within five (5) miles of the proposed WTF, and include parks and recreation areas; roadways; historic districts; schools and daycare facilities; religious institutions; and residential areas. Tree-line heights, on the subject property and adjoining properties, shall also be surveyed and depicted on the map.

(7)    For Category C and D sites, the applicant shall submit a report demonstrating the applicant's review of alternate sites, demonstrating the technological reason to justify why alternate sites cannot be utilized. Feedback from the Planning Department or Antenna Advisory Board shall be considered for the alternate site review. A detailed explanation must be provided as to why a site that would achieve a higher site category score or assignment cannot be used. The person seeking such an exception must satisfactorily demonstrate the reason or reasons why such a permit should be granted for the proposed site and the hardship (financial or otherwise) that would be incurred by the applicant if the permit were not granted for the proposed site. An applicant may not bypass sites of higher priority by stating the site presented is the only site leased or selected. An application shall address collocation as an option and, if such option is not proposed, the applicant must explain why collocation is commercially or otherwise impracticable.

(8)    Where coverage exists and supplemental capacity is the major objective for the applicant (as implied by the in-vehicle coverage maps and other application materials), a capacity analysis shall be submitted. The capacity analysis shall describe the need for increased capacity in the areas of the proposed site, including the operations and call traffic at all existing sites that surround the proposed facility. A technical description of why the nearby existing sites cannot be modified (by increasing power, modifying antennas, or adding base station radios, for instance) should be included in the capacity report.

(9)    For Category D sites, the applicant shall submit a report demonstrating the applicant's review of alternate technologies such as the use of microcells or Distributed Antenna Systems (DAS), demonstrating in detail the technological reason to justify why alternate technologies cannot be utilized. A detailed explanation must be provided as to why the use of such alternative technologies that would achieve a higher site category score or assignment cannot be used. The person seeking such an exception must satisfactorily demonstrate the reason or reasons why such a permit should be granted for the proposed technology and the hardship (financial or otherwise) that would be incurred by the applicant if the permit were not granted for the proposed technology. An applicant may not satisfy its obligations on the basis of generalized claims or concerning whether such technologies are generally utilized, and must provide site-specific evidence that such technologies are not feasible or impractical on a site-specific basis.

(10)   Nothing contained herein shall limit the right or ability of the Planning Board to request additional information or data from the applicant (including but not limited to coverage maps for alternate height scenarios).

# GENERAL REQUIREMENTS

## § 251-20.    Information Required for Antennas

For all wireless communication antennas, the following information shall be provided:

A   If the name or address of the owner or operator of the antenna facility is changed, the Building Department of the Town of Clarkstown shall be notified of the change within ninety (90) days.

B   Within ninety (90) days of operating any transmitting antenna, the owner or operator shall submit to the Building Inspector a written certification by a New York State licensed Professional Engineer (for

monopole or tower installations) that the antenna complies with the Town of Clarkstown Code and all other applicable governmental regulations.

C    Consent to allow additional antennas (for purposes of co-locating) on any new antenna towers, if feasible.

## § 251-21.  Requirements Applicable to All Antennas

For all proposed wireless communication antennas, the following requirements are applicable:

A.   For proposed sites within 100 feet of other sources of radio frequency (RF) energy, emanating from other wireless communication facilities, the applicant shall provide an estimate of the maximum total exposure from all nearby stationary sources and comparison with relevant standards. This assessment shall include individual and ambient levels of exposure. It shall not include such residentially based facilities, such as cordless telephones.

B.   All obsolete or unused wireless communication antennas (including tower supports) shall be removed within sixty (60) days of cessation of operations at the site. The Town may remove such facilities after sixty (60) days and treat the cost as a tax lien on the property.

C.   All antennas shall be identified with signs not to exceed six (6) square feet, listing the owner or operator's name and emergency telephone number, and shall be posted in a conspicuous place

D.   No source of nonionizing electromagnetic radiation (NIER), including facilities operational before the effective date of this Chapter, shall exceed the Federal or State NIER emission standard.

E.   New antennas and supporting towers shall be designed to accommodate additional antennas for purposes of co-locating.

## § 251-22.    Requirements applicable to new towers

A.   The applicant shall demonstrate to the satisfaction of the Planning Board that there exists no tower on which the antenna may co-locate or co-location is not feasible for any of the following reasons:

   (1)    The applicant has been unable to come to a reasonable agreement to co-locate on another tower. The names, addresses, phone and FAX numbers of other service providers approached shall be provided, accompanied by a written statement as to the reason an agreement could not be reached.

   (2)    The antenna will not unreasonably interfere with the view of or from any park, designated scenic area or historic district, site or structure.

   (3)    The radio, television, telephone or reception of similar signals for nearby properties will not be disturbed or diminished.

   (4)    The applicant's network of antenna locations is not adequate to properly serve its customers, and the use of facilities of other entities is not suitable for physical reasons.

   (5)    Adequate and reliable service cannot be provided from existing sites in a financially and technologically feasible manner consistent with the service provider's system requirements.

(6) Existing sites cannot accommodate the proposed antenna due to structural or other engineering limitations (e.g., frequency incompatibilities).

(7) For proposed monopole or tower facilities, a report by a New York State licensed Professional Engineer specializing in structural engineering, certifying that the proposed design is structurally sound.

B. Any application for the approval of a special permit for a wireless communication facility shall include a report by a qualified Radio Frequency Engineer, health physicist or other qualified professional as determined by the Planning Board, which calculates the maximum amount of Non-Ionizing Electromagnetic Radiation (NIER) which will be emitted from the proposed wireless communication facility upon its installation and demonstrates that the facility will comply with the applicable Federal or State standards.

## § 251-23.    Applicant's Obligation to Provide Assessment Information and Evidence That Emissions Exposures Do Not Exceed Federal and State Levels

No antenna or combination of antennas shall expose the general public to NIER levels exceeding the standard of any Federal or State agencies having jurisdiction. In addition, no antenna facility shall emit radiation such that the general public will be exposed to shock and burn in excess of the standards contained in ANSI C-95.1. For roof-mounted, co-located or other situations in which public exposure is likely, the application shall include:

A. An assessment of potential public exposure to radio frequency (RF) energy from the proposed facility, indicating the facility's compliance with applicable Federal or State standards. The applicant shall identify the maximum exposure level, the locations at which this occurs, the estimated RF levels at specific locations of community interest, such as schools, residences or commercial buildings, and the applicable maximum levels allowed by Federal and State laws. Assumptions used in the calculations shall be stated, including building heights and topography.

B. A multiple-source exposure-impact assessment shall be prepared if the wireless communication facility is to be situated on the same site as existing facilities, such as a tower or roof.

C. Evidence that the maximum exposure to the general public will not exceed Federal or State standards.

D. An identification of rooftop areas to which the public may have access. The exposure in these areas shall be in compliance with the standards established by any Federal or State agencies.

E. An identification of how much of the roof, if any, should be designated a controlled environment, due to RF field levels in accordance with the applicable Federal or State standard.

F. Notification of the building management if any portion of the roof needs to be identified as a controlled environment, due to RF levels in excess of the guidelines in the applicable Federal or State standards.

## § 251-24.  NIER Measurements and Calculations

All applicants for wireless telecommunications facilities in any district shall submit calculations of the estimated NIER output of the antenna(s). For Category A sites not requiring a special permit, the calculations shall be provided to the Building Inspector prior to the issuance of a permit. For antenna applications requiring a special permit, the calculations shall be provided to the Planning Board at the

*Clarkstown – Ch 251*

time of making the application for special permit.  For antennas requiring recertification under Section 251-37, RF field measurements shall be obtained annually.  The Planning Board may require baseline RF field measurements for newly approved sites, based on the nature of the site location and co-location. NIER levels shall be measured and calculated as follows:

A.  Measuring equipment used shall be generally recognized by the Environmental Protection Agency (EPA), National Council on Radiation Protection and Measurement (NCRPM), American National Standards Institute (ANSI) or National Bureau of Standards (NBS) as suitable for measuring NIER at frequencies and power levels of the proposed and existing sources of NIER.

B.  Measuring equipment shall be calibrated as recommended by the manufacturer in accordance with methods used by the NBS and ANSI, whichever has the most current standard.

C.  The effect of contributing individual sources of NIER within the frequency range of a broadband measuring instrument may be specified by separate measurement of these sources using a narrowband measuring instrument.

D.  NIER measurements shall be taken based on maximum equipment output. NIER measurements shall be taken or calculated when and where NIER levels are expected to be highest due to operating and environmental conditions.

E.  NIER measurements shall be taken or calculated along the property lines at an elevation six (6) feet above grade at such locations where NIER levels are expected to be highest and at the closest occupied structure.

F.  NIER measurements shall be taken or calculated following spatial averaging procedures generally recognized and used by experts in the field of RF measurement or other procedures recognized by the FCC, EPA, NCRPM, ANSI and NBS.

G.  NIER calculations shall be consistent with the FCC, Office of Science and Technology (OST) Bulletin 65 or other engineering practices recognized by the EPA, NCRPM, ANSI, NBS or similarly qualified organization.

H.  Measurements and calculations shall be certified by a New York State licensed Professional Engineer, health physicist or a Radio Frequency Engineer. The measurements and calculations shall be accompanied by an explanation of the protocol, methods and assumptions used.

## § 251-25.    Placement and Height of Wireless Telecommunications Facilities

A.  Antenna(s) mounted on a roof, unless wall mounted on an existing roof-mounted mechanical enclosure, penthouse, stairwell, or similar appurtenance, shall be located so that visibility of the installation is limited to the greatest extent practicable when viewed from all yards. The elevation of the top of any antenna shall not exceed the elevation of the roof at the point of installation by more than 10 feet in a residential district or 15 feet in a non-residential district.  Wall mounted antenna(s) shall be at least 20 feet above ground level, and shall not extend greater than 18 inches from a building wall unless it is demonstrated that greater separation distance is required for antenna operations.

B.  The applicant must submit documentation justifying to the Board the total height of any telecommunications tower, facility and/or antenna and the basis therefore. Such justification shall be to provide service within the Town, to the extent practicable, unless good cause is shown.

C.  Telecommunications towers shall be no higher than the minimum height necessary, including any potential future co-locators to the extent reasonably anticipated.

D. The maximum height of any telecommunication tower and attached antennas constructed after the effective date of this Chapter shall not exceed that which shall permit operation without artificial lighting of any kind, in accordance with municipal, County, State, and/or any Federal statute, law, local law, Town ordinance, code, rule or regulation.

E. In residential districts wireless communication facilities shall not exceed 50 feet in height unless the requirements of Subsection F below are met. In nonresidential districts, wireless communication facilities shall not exceed 100 feet in height unless the requirements of subsection F below are met. These height requirements shall supersede those of Chapter 290, Zoning.

F. In the event that applicant proposes a height greater than that listed in Subsection E above, the applicant must demonstrate to the satisfaction of the Planning Board that:

    (1)    Alternative means of mounting the antenna have been considered and are not feasible for the applicant.

    (2)    The height is the minimum height necessary for adequate operation to meet the applicant's communication needs and the aesthetic intrusion has been minimized to the greatest extent practicable.

    (3)    The height does not exceed 50% of the maximum height listed in Subsection E above.

    (4)    The site or building on which the facility is proposed to be installed does not become nonconforming or increase in nonconformity by reason of the installation of wireless communication facilities. This includes, but is not limited to, yard, buffer, floor area ratio for equipment buildings, parking, open space and other requirements. Height requirements of Chapter 290, Zoning, shall apply to buildings and equipment shelters.

    (5)    The height is required in order to accommodate antennas of future potential co-locator(s) to the extent reasonably anticipated.

G. Antenna(s) mounted on a new or existing monopole or tower shall comply with the height requirements specified in this section. Notwithstanding, the Planning Board shall be permitted to increase the height of any tower beyond the limitations set forth herein in order to accommodate additional users. In reviewing a request for greater height, the Planning Board shall balance the effect of a greater height against the provision of one or more additional towers, co-locating or other alternatives.

H. In residential districts, wireless communication towers and monopoles shall be separated from residential buildings on adjacent or abutting properties for a distance by not less than one and a half times the height of the tower or monopole. This provision shall apply to the proposed use for wireless communication facilities of towers or monopoles existing at the time of adoption of this Chapter.

## § 251-26.    Co-Location

Co-location shall be required when feasible. If the site or installation will become nonconforming or increases in nonconformity due to the installation of the co-locating telecommunications equipment, a special permit under this Chapter shall be required. If permitted, co-location may be required for Category A and B sites and shall be required for Category C and D sites unless the personal wireless service provider submits proof as part of the submitted application acceptable to the approving agency that reasonable efforts to co-locate have been unsuccessful due to:

A. The absence of existing installations in the area requiring service;

B. An inability to use existing sites in a technologically feasible manner consistent with the personal wireless service provider's system requirements;

C. Structural or other engineering limitations, such as frequency incompatibilities; or

D. An inability to secure permission of the owner(s) of the existing site(s) and/or antenna(s) facility at reasonable cost to allow the additional installation.

## § 251-27.     Visual Impact:  Lighting, Painting and Equipment Shelters

A. Wireless telecommunications facilities shall not be artificially lighted or marked, except as required by law, or approved by the Planning Board.

B. Telecommunications towers shall be of a galvanized finish or painted with a rust-preventive paint of an appropriate color to harmonize with the surroundings as approved by the Board and shall be maintained in accordance with the requirements of this Chapter.

C. An equipment facility shall be sited to minimize adverse visual impact on surrounding areas, parks and roadways. The Town may require that an equipment facility be located completely or partially below grade or be located within an existing building or structure.  An equipment facility not located within an existing building or structure shall be treated in an architectural manner compatible with the buildings and structures in the vicinity using materials, colors and textures designed to blend with the surrounding buildings and structures and/or natural surroundings.  An equipment facility shall be the minimum dimensions necessary to serve the site and shall be no greater than 8 feet in height above existing grade (ground surface or roof line) for shelters with flat roofs or 12 feet in height above existing grade (ground surface or roof line) for shelters with pitched roofs .

D. In the event that applicant proposes a height greater than that listed in Subsection C above, the applicant must demonstrate to the satisfaction of the Planning Board that:

    (1)     Alternative means of locating the equipment facility have been considered and are not feasible for the applicant.

    (2)     The height is the minimum height necessary for adequate operation to meet the applicant's communication needs and the aesthetic intrusion has been minimized to the greatest extent practicable.

    (3)     The height does not exceed 50% of the maximum height listed in Subsection C above.

    (4)     The site or building on which the facility is proposed to be installed does not become nonconforming or increase in nonconformity by reason of the installation of wireless communication facilities. This includes, but is not limited to, yard, buffer, floor area ratio for equipment buildings, parking, open space and other requirements.  Height requirements of Chapter 290, Zoning, shall apply to buildings and equipment shelters.

    (5)     The height is required in order to accommodate equipment of future potential co-locator(s to the extent reasonably anticipated.

## § 251-28.     Landscaping Requirements

For any new wireless communication towers, landscaping shall be provided as follows:

A.    In determining the most appropriate landscaping to be provided, the Planning Board shall consider the visual impact of the proposed facility in its setting with regard to immediate proximity of observers, the sight lines from major viewing points, and from those features identified in § 251-10C.

B.    The area surrounding the installation shall be landscaped and maintained with paving, shrubs and ground cover consistent with the surrounding community character.

C.    Any buildings or other equipment shelters associated with the antenna facility shall be landscaped with evergreen trees or shrubs of sufficient size and density to screen, in whole or part, and effectively mitigate the appearance of the structures and buildings. Any antenna facility requiring a tower or pole shall plant trees around the facility of a minimum height of 10 feet a planting that will, over time, reduce the visual impact from the tower or pole.

D.    When a security fence is required, the outside of such fencing shall be landscaped with evergreen shrubs, trees or climbing evergreen material on the fencing or may contain wooden slats woven into the fence so as to mitigate and minimize the industrial character of the fence.

E.    An existing natural vegetative buffer which meets or exceeds the above requirements can be retained to meet the landscape requirements set forth above.

## § 251-29.    Security

A.    All antenna towers, monopoles and other supporting structures shall be made inaccessible to children and constructed or shielded in such a manner that they cannot be accessed.

B.    Wireless telecommunications facilities with new structures (poles, towers) shall be located a distance of 350 feet or greater from the nearest child day-care center, school, camp, public park or playground. It is recognized by the Town of Clarkstown that open space or recreational areas may provide, under some circumstances, viable options for wireless facility siting.

C.    The area surrounding the facility shall:

(1)    Be fenced or otherwise secured in a manner which prevents unauthorized access by the general public to areas where the standards of any Federal or State agency are exceeded.

(2)    Contain appropriate signage to warn of areas of the site where:

i.  NIER standards are exceeded; and

ii.  High risks for shocks or burns exist.

D.    For wall-mounted antennas, the signage shall be placed no more than five feet off the ground below the antenna.

E.    For antennas mounted on the roof, the signage shall be placed on all doors which provide access to said roof. The signage shall be placed no more than five feet off the ground.

## § 251-30.    Registration

The Building Department shall keep a list of the names, addresses, type and maximum emissions of all antenna operators in the Town, along with a file of application data including coverage maps. This list shall be maintained from applications to the Planning Board and Building Department and from FCC or similar inventories of facilities in the Town. As a part of the initial registration and recertification of WTFs,

a copy of as-built drawings for each WTF should be provided to the building department and the Planning department. If the name or address of the owner or operator of the antenna facility is changed, the Building Department shall be notified of the change within thirty (30) days.

## § 251-31.    Performance Standards for New Antennas

New antennas must comply with the following performance standard that the estimated or measured non-ionizing electromagnetic radiation (NIER) from a proposed antenna, when added to existing radio frequency electromagnetic radiation from existing sources, will not exceed the guidelines set forth in the applicable Federal and State standards.

## § 251-32.    Planning Board Findings; Recognition of Federal and State Law

A.  The Planning Board shall make written findings that the issuance of a special permit is in compliance with all of the requirements of this Chapter

B.  In the event a denial of an applicant's request for a special permit would constitute an unlawful prohibition of cellular service under applicable Federal or State law, the Planning Board shall grant the special permit and shall have the authority to impose conditions upon such granting consistent with this Chapter and such Federal or State law.

## § 251-33.    Expiration; Issuance of Certificate of Use.

A.  The permit or special permit shall be issued to the user and shall expire upon expiration of the term indicated in the permit or special permit, upon a failure to obtain a recertification of a special permit as set forth in Section 251-37, upon an abandonment of the use as set forth in Section 251-39, upon a revocation of the permit or special permit, or upon notification to the building department by the user that the use allowed by the permit or special permit has been terminated.

B.  The applicant shall provide a report to the Building Inspector prepared by a New York State licensed Professional Engineer certifying that any monopole or tower has been constructed in accordance with the plans approved by the Building Inspector.

## § 251-34.    Existing Installations

A.  The operator of any wireless communication facility existing at the time that the 2007 amendments to this Chapter take effect shall be permitted to remain in operation, subject to the provisions of their existing permits and the provisions of this Chapter relating to recertification and renewal of permits. Operating antennas or towers that are legally nonconforming with respect to area regulations of this Chapter shall be permitted to remain until such time as a request is made to modify the antenna or tower.

B.  Any facility for which emission, structural and security compliance documentation is not received shall cease operations within six months of the enactment of such amendments to this Chapter and be immediately removed thereafter in accordance with the provisions of this Chapter.

## § 251-35.    Installation of Wireless Telecommunications Facility Upon Issuance of Special Permit

A.  All utilities at a wireless telecommunications facilities site shall be installed underground and in compliance with all laws, rules and regulations of the Town, including specifically, but not limited to, the National Electrical Safety Code and the National Electrical Code where appropriate. The Board

may deem the requirement of underground installation of utilities satisfied by waiving or relaxing the requirement whenever, in the opinion of the Board, such waiver or relaxation shall not be detrimental to the health, safety, general welfare and environment, including the visual and scenic characteristics of the area.

B.  A person who holds a special use permit for wireless telecommunications facilities shall construct, operate, maintain, repair, provide for removal of, modify or restore the permitted wireless telecommunications facilities in strict compliance with all current applicable technical, safety, safety-related, and all other applicable codes and all applicable laws adopted by the Town, County, State or United States, including but not limited to the most recent editions of the National Electrical Safety Code and the National Electrical Code, as well as accepted and responsible workmanlike industry practices and recommended practices of the national association of tower erectors. The codes referred to are codes that include, but are not limited to, construction, building, electrical, fire, safety, health and land use codes. In the event of a conflict between or among any of the preceding, the more stringent shall apply unless otherwise dictated by law.

C.  A holder of a special use permit granted under this Chapter shall obtain, at its own expense, all permits and licenses required by applicable law, rule, regulation or code and must maintain the same, in full force and effect, for as long as required by the Town or other governmental entity or agency having jurisdiction over the applicant.

D.  After construction and prior to receiving a certificate of compliance, the applicant shall furnish written certification that the wireless telecommunications facilities are grounded and bonded so as to protect persons and property and installed with appropriate surge protectors.

## § 251-36.    Maintenance

Annually from the date the special use permit is issued, a report shall be filed with the Building Inspector by a qualified, licensed Professional Engineer specializing in structural engineering certifying that the wireless or attached wireless telecommunications facility is structurally safe, has been maintained in good order and repair, and complies with all applicable structural safety standards. Every wireless or attached wireless telecommunications facility shall at all times be maintained in good order and repair and in a structurally safe condition.

## § 251-37.    Recertification

A.  At any time between twelve (12) months and six (6) months prior to the five-year anniversary date after the effective date of the special use permit and all subsequent fifth anniversaries of the effective date of the original special use permit for wireless telecommunications facilities, the holder of a special use permit for such wireless telecommunications facilities shall submit a signed written request to the Planning Board for recertification. In the written request for recertification, the holder of such special use permit shall note the following:

(1)  The name of the holder of the special use permit for the wireless telecommunications facilities.

(2)  If applicable, the number or title of the special use permit.

(3)  The date of the original granting of the special use permit.

(4)  Whether the wireless telecommunications facilities have been moved, relocated, rebuilt or otherwise modified since the issuance of the special use permit and, if so, in what manner.

(5)    That the wireless telecommunications facilities are in compliance with the special use permit and in compliance with all applicable codes, laws, rules and regulations. All NIER exposure data based on field measurements that were collected prior to the date of recertification shall be compiled and submitted in accordance with Section 251-24

(6)    Recertification that the telecommunications tower and attachments are designed and constructed (as-built) in accordance with and continue to meet all local, County, State and Federal structural requirements for loads, including wind and ice loads. Such recertification shall be by a qualified New York State licensed Professional Engineer acceptable to the Town, the cost of which shall be borne by the applicant. A copy of as-built drawings for each WTF should be provided to the building department and the Planning department.

B.  If, after review of such request for recertification, the Planning Board determines the permitted wireless telecommunications facilities are in compliance with the special use permit and all applicable statutes, laws, local laws, ordinances, codes, rules and regulations, then the Board shall issue a recertification special use permit for the wireless telecommunications facilities, which may include any new provisions or conditions that are mutually agreed upon or required by applicable statutes, laws, local laws, ordinances, codes, rules and regulations. If, after such review, the Board determines that the permitted wireless telecommunications facilities are not in compliance with the special use permit and all applicable statutes, local laws, ordinances, codes, rules and regulations, then the Board may refuse to issue a recertification special use permit for the wireless telecommunications facilities, and, in such event, such wireless telecommunications facilities shall not be used after the date that the applicant receives written notice of such decision by the Board. Any such decision shall be in writing and supported by substantial evidence contained in a written record.

C.  This section shall also apply to permits and special permits issued prior to the date of enactment of the 2007 amendments to this Chapter, as well as to permits issued by the Building Inspector. As to permits issued by the Building Inspector, the recertification request shall be made to and determined by the Building Inspector.

D.  Any permit or special permit which does not contain an expiration date shall be deemed to expire, unless renewed through recertification, five years from the date of enactment of the 2007 amendments to this Chapter, and shall expire, unless again renewed, each five years thereafter.

## § 251-38.    Default and/or Revocation of Permit or Special Use Permit

A.  If wireless telecommunications facilities are repaired, rebuilt, placed, moved, relocated, modified or maintained in a way that is inconsistent or not in compliance with the provisions of this Chapter or of the special use permit, then the Town shall notify the holder of the special use permit in writing of such violation. Such notice shall specify the nature of the violation or noncompliance and the violations must be corrected within seven days of the date of the postmark of the notice, or of the date of personal service of the notice, whichever is earlier. Notwithstanding anything to the contrary in this subsection or any other section of this Chapter, if the violation causes, creates or presents an imminent danger or threat to the health or safety of lives or property, the Town may, at its sole discretion, order the violation remedied within 24 hours.

B.  If within the period set forth in subsection a above the wireless telecommunications facilities are not brought into compliance with the provisions of this Chapter, or of the permit or special use permit, or substantial steps are not taken in order to bring the affected wireless telecommunications facilities into compliance, then the Town may revoke such permit or special use permit for wireless telecommunications facilities and shall notify the holder of the permit or special use permit within 48 hours of such action.

## § 251-39.    Abandonment

A. Wireless telecommunications facility or attached wireless telecommunications facility not operated for the provision of wireless telecommunications services for a continuous period of twelve (12) months or more shall be deemed to be abandoned and shall be promptly removed, in no event later than ninety (90) days after such twelve-month period has expired. In addition, upon receipt of a notice of a determination of abandonment from the Building Inspector, a wireless telecommunications facility or attached wireless telecommunications facility shall be removed within ninety (90) days. When a notice of intent to cease operations is filed with the FCC, a copy shall contemporaneously be filed with the Building Inspector. A wireless telecommunications facility or attached wireless telecommunications facility shall be removed within ninety (90) days of filing such notice with the FCC. If a wireless or attached wireless telecommunications facility is not removed within the time prescribed by this section, the Town may remove such facility and obtain reimbursement for its costs from one or more of the responsible parties. In its discretion, the Town may enforce any bond submitted. Costs incurred by the Town in enforcing the provisions of this section shall constitute a lien against the property on which the wireless or attached wireless telecommunications facility is located, and shall be levied, assessed and collected in the same manner as Town taxes. The foregoing shall not be construed to limit any of the rights or remedies of the Town to require the removal of a facility or to recover any costs incurred by the Town.

## § 251-40.    Fees

A. Application to the Planning Board for a special permit under this Chapter shall be accompanied by a fee of $500, plus postage charges, to defray the cost of processing the application. Applications that are determined to be Category C sites shall be accompanied by an additional fee of $500. Applications that are determined to be Category D sites shall be accompanied by an additional fee of $1000.

B. Appearances before the Antenna Advisory Board, for purposes of reviewing the pre-application information, preliminary screening, and other items, shall be accompanied by a fee of $500 per appearance.

C. The applicant shall be required to provide funds to an escrow account to allow the Town to retain such technical experts involving radio frequency as may be necessary to review the application. For WTF applications requiring a special use permit, the applicant shall deposit, at the time of application, $7,500 (Category D sites) or $5000 (Category B and C sites) in an escrow account maintained by the Town for such funds, to be used by the Planning Board for professional services deemed necessary to assist in the review and evaluation of the application, including but not limited to review of land use, site plan, legal, technical, scientific and aesthetic issues. If at any time during the review process the balance falls below $2,000, the Town shall so notify the applicant and the applicant shall be required to replenish the account with sufficient funds to bring the account balance to $5,000 before any further action or consideration is taken on the application. Any unused funds from the escrow account shall be returned to the applicant within 30 days of the final decision required for issuance of a building permit.

## § 251-41.    Additional Bond Requirement for All Wireless Telecommunications Facilities

The owner of a wireless telecommunications facility shall post and maintain a bond with the building department ensuring that the facility will be properly removed and disposed upon expiration of its special permit pursuant to Sections 251-37 and 251-38, upon abandonment of the facility pursuant to Sections 251-39, or upon an event which under applicable law authorizes the Town to abate a nuisance by

removing in whole or in part the facility. This requirement shall apply to existing WTFs at such time as an application shall be made for recertification of a permit or special use permit. A bond of $12,000 shall be posted for each roof top installation or installation on an existing structure other than a tower or pole constructed for the primary purposes of wireless telecommunications. A bond of $50,000 per cell tower site with multiple providers shall be established (if co-location is proposed on a tower or pole structure whose primary purpose is for wireless telecommunications, or if future co-location is contemplated (i.e., new tower) the Board will entertain alternate bond requirements from the applicant or tower owner).

## § 251-42.    Definitions

As used in this Chapter, the following terms shall have the meanings indicated:

3G (Third Generation): 3G is characterized by high-speed, high-bandwidth services the support a variety of applications, including video streaming and full motion video teleconferencing.

ANSI: American National Standards Institute.

ANTENNA: A system of electrical conductors for radiating or receiving radio waves.

ANTENNA ELEMENT: Often referred to as a dipole element, is a small 4- to 6-inch piece of metal that transmits and receives the radio signal within the antenna enclosure.

ANTENNA GAIN: Refers to the maximum gain of the antenna due to concentration of energy in a particular direction.

ANTENNA PATTERN: Refers to the shape of the antenna beam in the horizontal and vertical plane in an ideal non-reflective environment.

BEST AVAILABLE TECHNOLOGY: The latest stage of development of processes, facilities and methods of operation practically suitable for the intended purpose to reduce the impact of a wireless or attached wireless telecommunications facility on an immediate neighborhood and the Town, including, but not limited to, camouflage techniques and stealth technology. It is anticipated that the processes, facilities and methods will change with time in light of technological advances and improvements in scientific knowledge and understanding. Economic considerations shall be included in assessing practical suitability, but shall not be the sole or overriding consideration, in the absence of extraordinary circumstances shown.

CAPACITY: The number of mobile users that can reliably be serviced by a WTF.

CELL SITE: A transmitter/receiver location for a WTF that consists of a base station, antennas, and coaxial cables interconnecting the two. The cell site contains the equipment that establishes the radio link between the wireless network and the wireless subscriber unit. The geographical area served by the Cell Site is referred to as the "cell."

CELL SITE DENSITY (Cell Density): A measurement of the number of cell sites within a geographical area, typically measured as cell sites per square mile of area.

CELL SPLITTING: The process of converting a single cell to multiple cells by sectorizing the antennas in the cell site or constructing additional cells within a cell site.

COAXIAL CABLES: An RF transmission line cable consisting of a central conductor, surrounded by an insulating material and a second conductor surrounding the insulation.

*Clarkstown – Ch 251*

CO-LOCATION:  The practice of mounting and locating the antennas and equipment for more than one service provider at the same WTF site.

COVERAGE:  The general term that describes the ability of a WTF to send and receive wireless signals of sufficient strength to provide reliable cellular/PCS service.

DAS: Distributed Antenna System.

DECIBEL (dB):  Unit for measuring relative strength of signal.

ERLANG:  A dimensionless unit of average traffic density in a telecommunications network.

EXISTING STRUCTURE:  A building, tower, pole, or other structure whose primary purposes is not for wireless communications.

FCC:  Federal Communications Commission; the US regulatory body for telecommunications.

FREQUENCY: The number of sinusoidal cycles made by electromagnetic radiation in one second; usually expressed in units of hertz (Hz).

HISTORIC DISTRICTS, SITES AND STRUCTURES: Any locations designated by municipal, County, State or Federal agencies as having significance as historic district, site or structure.

NIER (NONIONIZING ELECTROMAGNETIC RADIATION): Electromagnetic radiation of such frequency that the energy of the radiation does not dissociate electrons from their constituent atoms when an atom absorbs the electromagnetic radiation.

ORIENTATION or ANTENNA BEAM ORIENTATION:  Refers to the direction of the main beam of the antenna.  The orientation consists of two parts, the antenna azimuth and the antenna downtilt.  The azimuth is the direction of the main beam in the horizontal plane relative to north.  The downtilt is the direction in the vertical plane.

PHOTO SIMULATION:  A photographic superimposition of an existing view with the image of a tower (or other structure) to provide a sense of the visual impact expected for a proposed structure.

RADIO FREQUENCY (RF):  The general term referring to high frequency waves utilized in wireless systems to facilitate the propagation of information from one location to another.

RADIO FREQUENCY OR RF DRIVE TEST:  The process of erecting a temporary transmit antenna for the purpose of measuring path loss from a proposed base transceiver station or otherwise measuring the actual system performance, including the use of a temporary transmitter to provide a test signal to the elevated antenna while a vehicle equipped with measurement instruments is driven on roadways to collect samples of average signal strength at numerous locations in all areas of target coverage. Data is gathered for existing coverage and for each incremental height of the test antenna.

SCENIC AREAS: Any area with a defined boundary and designated by municipal, County, State or Federal agencies as having scenic significance.

SPECIAL USE PERMIT, OR SPECIAL PERMIT:  A special use permit issued by the Planning Board.

WIRELESS TELECOMMUNICATION FACILITIES: (WTFs) - Any facility for the receiving or transmitting of wireless signals for commercial purposes, such as cellular telephone services, personal communications services (PCS), fleet communications systems and similar commercial facilities, whether operated in support of another business activity or available for the transmission of signals on a sale or rental basis. As used herein, the term shall include necessary equipment buildings as well as towers or

monopoles. For purposes of utilizing the scoring matrix set forth in this Chapter, multiple DAS nodes and associated equipment that service a common area (including but not limited to a roadway or commercial corridor) will be considered as a single WTF. Licensed facilities whose sole or predominant purposes are to provide wireless services to in-building areas, and whose antennas/transmitters are located completely within the buildings they serve are exempt from this Chapter.

## § 251-43.    Severability

Should any section, paragraph, sentence, clause, word or provision of this Chapter be declared void, invalid or unenforceable, for any reason, such decision shall not affect the remaining provisions of this Chapter.

## § 251-44.    Supersession of inconsistent provisions

Pursuant to New York Municipal Home Rule Law Section 22, the provisions of this Chapter are intended to supersede any inconsistent provision of law.

## § 251-45.    When effective

Pursuant to New York Municipal Home Rule Law Section 27, this Chapter shall take effect immediately upon filing with the New York State Secretary of State.

TABLE 1
Town of Clarkstown
Wireless Siting Plan
Preliminary Site Screening Tool for
Wireless Communications Facilities

## PRELIMINARY SITE SCREENING - TEMPLATE

| Criteria | Factor | Criteria Score |
|---|---|---|
| Area Use Information | Facility located in a residential area, or on non-commercial/industrial property within 500 ft. of a residential area = 0<br>Facility located on an industrial/commercial property and greater than 350 ft from a residential area = 10<br>Facility located greater than 500 ft from a residential area = 10<br><br>(NOTE: distances measured from wireless facility equipment to nearest residential property line) | 0 |
| Potential aesthetic and safety impacts on Public Assembly (e.g. distance from schools, day care facilities, etc.) | Facility Distance > 1000 ft = 10<br>Facility Distance between 500 and 1000 ft = 5<br>Facility Distance < 500 ft = 0<br><br>(NOTE: distances measured from wireless facility equipment to property line of interest) | 0 |
| Potential aesthetic and safety impacts on Special Areas (e.g. distance from historic landmarks, recreation areas, etc.) | Facility Distance >500 ft = 10<br>Facility Distance between 350 and 500 ft = 5<br>Facility Distance < 350 ft = 0<br><br>(NOTE: distances measured from wireless facility equipment to property line of interest) | 0 |
| Installation Type | New Tower/Pole = 5<br>Roof Top or other existing structure = 10<br>Alternate Technology - DAS or microcells = 30 | 0 |
| Stealthing Proposed (e.g. flagpole, tree, roof top screen, alternate technology) | Yes = 10<br>No = 0 | 0 |
| Co-Location Potential (for new structure or new rooftop site) | Yes = 10<br>No = 5 | 0 |
| Height Requirement as per Chapter 251 (e.g. < 50 ft. in a residential area for single use) | New Structure <50 ft = 20<br>New Structure 50-75 ft; or Co-Location on Existing Structure = 10<br>New Structure >75 ft =5 | 0 |
| Property Set-Back and Distance Requirements of the Town Code | Yes = 10<br>No = 0 | 0 |
| New Towers - Fall Zone: 1.5 Times (or Greater) the Height of Proposed Structure to Nearest Occupied Structure or Property Line | Yes = 10<br>N/A = 5<br>No = 0 | 0 |
| Landscaping Proposed | Yes = 10<br>No = 0<br>NA = 5 | 0 |
| Other Potential Impacts (e.g. property values, or other specific aesthetic issues [including but not limited to proximity and potential impact to Long Path, Hudson River Valley National Heritage Area] and safety issues concerning structural integrity, wind loads and similar concerns) | None = 10<br>Moderate = 5<br>Severe = 0 | 0 |
| | TOTAL SCORE | #REF! |

## PRELIMINARY SITE SCREENING EVALUATION

| | |
|---|---|
| Proposed alternate technology > 60; O&R tower or substation > 90; existing water tower > 90; Proposed Co-location at existing WTF or Rooftop site > 105 | = Category A: refer to requirements of Chapter 251 of Town Code |
| Greater than 80 | = Category B: refer to requirements of Chapter 251 of Town Code |
| 50 - 79 | = Category C: refer to requirements of Chapter 251 of Town Code |
| Less than 50 | = Category D: refer to requirements of Chapter 251 of Town Code |

TEMPLATE