MAY-03-2007 09:30    FROM-                                    T-287  P.002/005  F-047

**TOWN OF CLARKSTOWN**
Department of Planning

JOSE C. SIMOES, Town Planner
ROBERT GENESLAW, Planning Consultant
10 Maple Avenue
New City, New York 10956-5099
(845) 639-2070 (phone)
(845) 639-2071 (fax)
planning@town.clarkstown.ny.us



**TOWN OF CLARKSTOWN**
Planning Board

SHIRLEY J. THORMANN, Chairwoman
RUDOLPH J. YACYSHYN, Vice Chairman
GILBERT J. HEIM, Member
MARVIN S. BAUM, Member
GEORGE A. HOEHMANN, Member
RICHARD C. SHOBERG, Member
ROBERT D. JACKSON, Member

✓ RC office of fire emergen[cy]

**RECEIVED**
FEB 21 2007
TOWN ATTORNEY'S OFFICE

Feb. 15, 2007

| | |
|---|---|
| Owner and/or Attorney | R.C. Dept. of Planning |
| Engineer | R.C. Dept. of Highways |
| ✓ Town Attorney | Orange & Rockland Utilities |
| ✓ Town Clerk | Architecture & Landscape Commission |
| ✓ Building Dept. | Highway Dept. |
| ✓ Environmental Control | N.Y.S.D.O.T. |
| Traffic & Traffic Fire Safety | Zoning Board of Appeals |
| ✓ Supervisor | ✓ Town Board |

Attached are the minutes of the Planning Board Meeting of January 10, 2007.

**f) TOWN BOARD REFERRAL: RESOLUTION SETTING PUBLIC HEARING ON A PROPOSED LOCAL LAW ENTITLED "A LOCAL LAW TO AMEND CHAPTER 251 (WIRELESS COMMUNICATION FACILITIES) OF THE TOWN CODE OF THE TOWN OF CLARKSTOWN"**

For the record, the above referral was discussed at the Planning Board Workshop on January 8, 2007. On January 11, 2007, the following was sent to Supervisor Gromack and the Honorable Town Board, under the signature of the Planning Board Chair, Shirley Thormann:

> The Planning Board reviewed the above referral at their workshop on January 8, 2007 and their regular Planning Board meeting on January 10, 2007. On a Motion by Hoehmann, Seconded by Heim, and carried 6:0, with Ayes of Yacyshyn, Baum, Shoberg & Jackson, the following was passed:
>
> **WHEREAS**, on November 14, 2006, the Town Board, by Resolution No. 773-2006, referred a proposed Local Law to amend Chapter 251 (Wireless Communication Facilities) of The Town Code to the Planning Board for report pursuant to Section 290-33 of the Zoning Local Law, and
>
> **WHEREAS**, on December 15, 2006, the Proposed Local Law Amending Chapter 251 (Wireless Communication Facilities) of the Town Code was received by the Planning Department from the Town Attorney's office for review, and
>
> **WHEREAS**, the Planning Board reviewed said proposed local law at their workshop meeting on January 8, 2007 during which Michael Musso of HDR/LMS presented supporting research for the Local Law and, and

Continued

**TOWN BOARD REFERRAL: WIRELESS COMMUNICATION FACILITIES**
**PB MEETING OF 1/10/07**
**PAGE 2**

**WHEREAS,** the Planning Board, finds that pursuant to Town Code Section, 290-33 B(1):

(a) The proposed amendment is consistent with the aims and principles embodied in Chapter 251. The intent of the amendments is to regulate wireless telecommunication facilities (WTF) to protect the predominantly suburban residential character of the town and the property values of the community. Such regulation is needed to protect the character of residential neighborhoods, schools, parks, churches, playgrounds, historic districts, sites and structures; to preserve scenic areas; to minimize aesthetic impacts; to preserve the health and safety of residents; and to respect the need of wireless telecommunication service providers to relay signals without electronic interference from other service providers' operations, while not unreasonably limiting competition among them.

(b) The proposed amendment will directly affect all areas and establishments of the Town. The proposed amendment regulates the specific siting of WTFs in all districts of the Town, while considering the potential impacts of those facilities on adjacent areas

(c) The provisions of the proposed amendment ensure adherence to the requirements of the State Environmental Quality Review Act, compelling the Town land use boards take a "hard look" at the potential environmental impacts of approving WTFs. The proposed amendments also reinforce the bulk requirements for structures pursuant to Chapter 290 and provide additional bulk requirements for WTFs (e.g. height, setbacks, etc.) to further safeguard the health and safety of the public.

**NOW THEREFORE BE IT FURTHER RESOLVED** that the Planning Board of the Town of Clarkstown does hereby recommend that the Town Board amend Chapter 251 of the Clarkstown Town Code as per the proposed Local Law with consideration of the following suggestions:

1. Acronyms should be spelled out the first time they are used.
2. Section 251-10. The facts leading to the passage of the Local Law and the intent of the Local Law should be differentiated. Items F through T describe facts leading to the passage of the Local Law Amendment, rather than describing the intent of the Law, and would be more appropriate as simple paragraphs introducing the Law before the Legislative Intent.
3. Section 251-10.V. and 251-11 D. WTFs sited on Town-owned property and local districts (including fire and school districts) should NOT be exempt from the Special Permit Process to ensure that they are given the same thorough level of planning review as those proposed on private property.

Continued

**TOWN BOARD REFERRAL: WIRELESS COMMUNICATION FACILITIES**
**PB MEETING 1/10/07**
**PAGE 3**

4. Section 251-13 A (12). Coverage maps should be consistent and somewhat generic to cover future changes in modeling etc. Item 12 should be modified to read, "...(b) the in-vehicle coverage modeled for the proposed facility (including a map showing estimated coverage at -84 dbm or lower)."
5. 251-19.E. The word "Planning" should be inserted before "Board" in the first sentence. A second sentence should be added stating that, "A building permit is required prior to the construction of any wireless facility."
6. 251-19.G. Applicants should submit "graduated" coverage maps, showing changes in coverage with different antenna heights for tower facilities.
7. 251-19.G (4). A "Long Form EAF" is not the proper term. It should be referred to as a "Full EAF."
8. 251-19.G (5). When performing visual impact studies, balloon tests could be affected by wind. Item 5 should be clarified to indicate that crane tests are the preferred method to insure that the proposed height of the WTF is not altered by wind or adverse weather conditions.
9. 251-25.A. Visibility of roof-mounted antennas should be limited from "all yards" not just the "front yard."
10. 251-26. Co-location should be "required" not just "permitted."
11. 251-31 and 251-38. As a part of the initial registration and recertification of WTFs, a copy of as-built drawings for each WTF should be provided to the Building Department and the Planning Department.
12. 251-35.B. All WTFs should comply with all other applicable codes and all applicable laws (providing Underwriters certificates, etc.)
13. Preliminary Site Screening Matrix:
    i. For all criteria, it should be clarified that distances should be measured from the property lines of the parcel on which a facility is proposed.
    ii. Area Use Information. Scoring factors should differentiate between residential areas and industrial/commercial areas. Factor should be modified to: "Facility located in a residential area, or on non-commercial/industrial property within 500 ft of a residential area = 0; Facility located on an industrial/commercial property and greater than 350 ft from a residential area = 10; Facility located greater than 500 ft from a residential area = 10."
    iii. Potential aesthetic and safety impacts on Public Assembly. Factors should be more sensitive to Public Assembly areas such as schools, given the potential for a longer duration of visual impact to children assembled daily, as compared to

Continued

**TOWN BOARD REFERRAL: WIRELESS COMMUNICATION FACILITIES**
**PB MEETING OF 1/10/07**
**PAGE 4**

    iv. Special Areas such as recreation areas, where people are not exposed to the sight of facilities as long or in great numbers. Factor for should be modified to: "Distance > 1000 ft = 10; Distance between 500 and 1000 ft = 5; Distance < 500 ft = 0."

    v. Potential aesthetic and safety impacts on Special Areas. "View" should be deleted from Criteria description as distances are more objective.

    vi. Other Potential Impacts. Examples should be eliminated or expanded (e.g., property values, or other specific aesthetic issues [including but not limited to proximity and potential impact to Long Path, Hudson River Valley National Heritage Area] and safety issues).

14. Antenna Advisory Board. The Planning Board recommends that the Antenna Advisory Board consist of 3 members and that they NOT be affiliated to any degree with the Planning Board (or with application review after pre-screening). The initial qualifications and credentials of members should be recommended by the Planning Board.