UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
NEW YORK SMSA LIMITED PARTNERSHIP d/b/a
VERIZON WIRELESS, NEW CINGULAR WIRELESS            Case No. 07 CV 7637
PCS, LLC, SPRINT SPECTRUM L.P., and OMNIPOINT       (Brieant, J.)
COMMUNICATIONS, INC., a wholly owned subsidiary     (Yanthis, M.J.)
of T-MOBILE USA, INC.,

                              Plaintiffs,
                                                                   **SIMOES**
                                                                     **DECLARATION**

    - against t-

THE TOWN OF CLARKSTOWN and THE TOWN
BOARD OF THE TOWN OF CLARKSTOWN,

                              Defendants.
----------------------------------------------------------------------X

      JOSE C. SIMOES, declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

      1.     I am the Town Planner for the Town of Clarkstown, and have held that position since July, 2003. I graduated with a Masters in Urban and Environmental Planning from the University of Virginia in 2000. I have seven years of municipal planning experience, three with the Rockland County Planning Department and four with the Town of Clarkstown Planning Department. A copy of my curriculum vitae is attached.

      2.     In connection with my role as Town Planner for the Town, I have also served as a member of the Technical Advisory Committee (TAC) since in or about July, 2003.

3. Prior to the recent amendments to the Town's Wireless Law in 2007, TAC played a significant role in the review and processing of applications for cell towers and other wireless telecommunications facilities (WTFs).

4. Since the Town's original enactment of its Wireless Law in 1996, and during the past several years in particular, siting applications have become increasingly more complex. In addition, the Town has been faced with ever-changing market forces and rapid changes and deployments of networks and technologies.

5. Over the past several years, it has become increasingly apparent that the Town's existing Wireless Law was ill-equipped to address these changing conditions. This necessarily led to delays and complications in the processing of siting applications under the 1997 version of the law.

6. It also became apparent that several of the carriers were submitting coverage maps which contained divergent and sometimes conflicting data, and which often left the Town, the Planning Board and TAC in a quandary and in the untenable position of attempting to compare "apples to oranges." Indeed, it became apparent that different carriers, and sometimes even the same carrier for different applications, were submitting purported coverage maps that were based on <u>different</u> coverage data and <u>different</u> coverage levels. Sometimes, the submitted coverage maps would simply omit important coverage data and omit the dBm levels entirely.

7. Against this background, and as detailed more fully in the accompanying Declaration of the Town Attorney, the Town's Wireless Law was substantially revamped and updated in 2007.

8.  The 2007 Amendments to the Town's Wireless Law include the creation an Antenna Advisory Board (AAB), whose sole responsibilities are to monitor developments in wireless telecommunications and WTFs, including new technologies and changes in capacity requirements, to monitor the cumulative effects of WTFs upon the landscape and character of the Town, and to advise the Planning Board concerning individual WTF site applications, including the aesthetic aspects of proposed facilities, the identification of potential alternate sites that may be considered, and other items.

9.  Contrary to the plaintiffs-carriers' contention, the creation of the AAB was intended to <u>expedite</u> and <u>streamline</u> the processing and decision-making process concerning WTF applications.

10. Indeed, prior to the 2007 Amendments, TAC and the Planning Board found it difficult to expeditiously process applications because of the deficiencies in applications and because of a lack of clear technical requirements. In contrast, the 2007 Amendments to the Town's Wireless Law require the submission of specific technical information as part of an application and the AAB, while serving purely in an <u>advisory</u> capacity to the Planning Board, was created in order to assist the Planning Board with the review of such technical matters.

11. Moreover, that the 2007 Amendments are designed to <u>streamline</u> and <u>expedite</u> the process – not unduly delay it – is apparent in the proposed amendments themselves, which now include an expedited "pre-application" process lasting no more than 45 days, where the carrier-applicant provides limited information concerning its request (i.e. identifies what it is it wants to erect, the proposed location, an engineer's certification regarding any structures, and a reception coverage map, §251-13). This

3

allows the Planning Board to identify the application as bearing a Category A, B, C, or D designation. (Category A designations posing the least anticipated adverse impacts, and Category D designations posing the greatest anticipated adverse impacts). §251-13.

12. Notably, and contrary to the Carriers' suggestion, this pre-application process will <u>streamline</u> and <u>expedite</u> the process, particularly inasmuch as under the old version of the Wireless Law, and under the auspices of TAC, applications were often deemed incomplete or insufficient and were unable to proceed expeditiously through the formal hearing and approval process.

13. Moreover, so that category designations are made in a fair and consistent and objective manner, the Planning Board is now provided with a "Screening Matrix" which assigns specific impact factors and points, with the point totals corresponding to one of the four categories (Categories A through D).

14. Under the 2007 Amendments, once an application is found to fall into Category A, the pre-application is deemed to constitute an application, and the site is <u>exempt</u> from the Special Permit requirements. § 251-16. A prompt hearing, scheduled within 14 days, is held concerning only those limited conditions applicable to the issuance of a building permit. A building permit is then promptly issued in the same manner as all building permits.

15. With respect to Category B, C, and D designations, the Wireless Law requires the applicant to show that it actually needs the structure and antenna it desires to erect. The actual existence of a "gap" in the carrier's coverage is shown through reception coverage maps. §251-13(12). For the sake of consistency and objectivity, and so that differing applications can be compared in a meaningful fashion, the coverage

4

maps must at least show where the carriers have a level of reception of at least -84 dBm. Notably, this limited submission requirement is only what the maps must show, not what the Planning Board may determine is a genuine "gap." Id.

16. The remaining provisions of the 2007 Amendments to the Wireless Law are all similarly aimed at expediting and streamlining the process, and at lessening potential adverse impacts associated with aesthetics, property values, zoning, and other potentially adverse land use impacts of wireless facilities to the extent feasible.

17. In addition, as chronicled in the accompanying Declaration of the Town Attorney, during the legislative review process, and in connection with the numerous work sessions described therein, several lawyers for a number of carriers submitted to the Town Attorney various letter comments on the proposed amendments. Mele Decl., Exhibit D.

18. As the Town Attorney points out, several comments resulted in the proposed amendments being changed to accommodate the carriers' concerns. See Mele Decl., Exhibit E, Letter of May 29, 2007 to Carriers' attorneys forwarding "the latest revisions incorporating certain of the carriers' objections and concerns."

19. These changes or clarifications, made at the carriers' behest, are more fully described and set forth in the accompanying declaration of the Town Attorney.

20. One such clarification made at the request of the carriers, is that the newly appointed AAB – which functions entirely as an advisory board and purely in an advisory capacity – largely replaces the role formerly occupied by TAC, which up until the recent 2007 Amendments, was responsible for certain facets of review and processing of applications for wireless telecommunications facilities.

21. Indeed, it is indisputable that certain prior and inherent delays associated with TAC and Planning Board review under the prior version of law have now been <u>eliminated</u> and <u>streamlined</u> in favor of the strict time limits and deadlines imposed by the 2007 Amendments. For example, under the 2007 Amendments, if an application meets the criteria for favorable Category A classification, then a Special Permit is not even required, and the application shall be granted forthwith with virtually no further review or processing whatsoever.

22. In short, the 2007 Amendments, and the creation of the AAB in lieu of TAC, were all designed to <u>expedite</u> and <u>streamline</u> the application process.

23. Following extensive public hearings and carrier input concerning the proposed amended Wireless Law, the Town Board unanimously enacted the law on July 24, 2007. Exhibit A.

24. After due inquiry, it appears that no applications have been filed under the Wireless Law since its enactment in July, 2007.

25. Although the carriers have elected not to file even a single application under the new law, I fully expect and anticipate that applications will, in fact, be substantially streamlined and expedited under the 2007 Amendments, as opposed to under the 1996 version of the Wireless Law.

Dated:  Clarkstown, New York
        March 13, 2008

_____/s/_____
JOSE C. SIMOES

# JOSE C. SIMOES

8 Kings Court, Nanuet NY 10954 • 845-371-0868 • simoes.bj@gmail.com

**EDUCATION**

**Master of Urban and Environmental Planning**         **8/00**
University of Virginia
Charlottesville, VA

**Bachelor of Science in Biology**         **5/98**
Fairfield University
Fairfield, CT

**EXPERIENCE**
**Town of Clarkstown Department of Planning**         **7/03 – present**
New City, NY
*Town Planner*
- Coordinate the development of Clarkstown's Comprehensive Plan as an Environmental Impact Statement, which involves expanding the Town's GIS system, undertaking an extensive Economic Development Study and conducting a town-wide Biodiversity Assessment.
- Coordinate revitalization efforts in the Hamlet Centers of Central Nyack, West Nyack and New City through grant writing, vision planning, community outreach, physical planning and zoning amendments.
- Develop Town's Open Space Program to assess environmental importance of nominations of property for acquisition by the Town.
- Assess the environmental significance and potential impact of land use related actions of the Town Board under the New York State Environmental Quality Review Act; Oversee environmental impact assessment for the siting of wireless communication facilities, both public and private.
- Provide recommendations on changes to the Zoning Local Law; Draft amendments to the Zoning Local Law to provide affordable housing for seniors and volunteers
- Provide recommendations to the Zoning Board of Appeals on applications for use variances, area variances and interpretations of the Zoning Local Law.
- Conduct geospatial analysis using a Geographic Information System for the Planning Board, Zoning Board of Appeals, Town Board and Architecture and Landscape Commission; Produce maps of aerial photographs for various projects.
- Provide recommendations and draft resolutions for the Planning Board on site plans, subdivisions, Environmental Impact Statements, special permits and referrals from other Town departments, adjacent municipalities and regional agencies.
- Prepare correspondence for the Planning Board Chairperson and Town Supervisor.
- Assist applicants, design professionals and attorneys in the Planning Board approval process; Assist interested public in understanding the effect of proposed development on adjacent properties and neighborhoods.
- Work with community and civic organizations such as the Downtown New City Corporation, Valley Cottage Civic Association, West Nyack Civic Association and Central Nyack Civic Association.
- Work on ad-hoc committees of the Town such as Citizens Advisory Board for Housing and Task Force on Drainage.
- Represent the Town as the President of the Rockland Riverfront Communities Council, an inter-municipal organization comprised of 11 Rockland towns and villages; the Palisades Interstate Park Commission; and the County of Rockland.

**Rockland County Department of Planning**                              9/00 – 6/03
Pomona, NY
*County Planner*
- Reviewed proposed land use development (e.g., zoning, subdivision, site plans) for various Towns and Villages of Rockland and made recommendations according to State General Municipal Law, State Environmental Quality Review Act, local zoning ordinances and comprehensive plans.
- Accessed local and regional planning studies, such as the Village of Haverstraw Local Waterfront Revitalization Program, Route 303 Substainable Development Study, USDA Hudson Highlands Study, Mid-Hudson South Region Bicycle & Pedestrian Master Plan and Hudson River Valley National Heritage Area Management Plan.
- Represented the Planning Department as ex-officio to the Rockland County Environmental Management Council, Soil & Water Conservation District, Agricultural & Farm Protection Board, and Cornell Cooperative Extension Association; and secretary to the Water Quality Committee and Downtown New City Corporation.
- Worked with the Office of Fire and Emergency Services to develop a procedure for siting wireless telecommunication facilities on County property in accordance with the State Environmental Quality Review Act (SEQRA)

*Rockland Riverfront Communities Council Coordinator*
- Organized meetings, drafted letters, wrote minutes, complied survey data, set up workshops and researched potential project ideas and grants.
- Planned a continuous Greenway Trail along Rockland's riverfront for the Greenway Conservancy for the Hudson River Valley. Identified potential trail connections and existing routes that could be designated as Greenway Trails.
- Obtained a $60,000 grant to develop the Rockland County Hudson River Valley Greenway Compact, a regional plan for inter-municipal cooperation on sustainable land use.
- Obtained and administered a $17,000 grant from the Hudson Valley Greenway Communities Council to design a brochure highlighting Rockland's riverfront attractions and a logo identifying the organization.

*Editor of the Rockland Municipal Planning Federation Newsletter*
- Published and disseminated the Rockland Municipal Planning Federation News, a local newsletter highlighting County planning initiatives that serves over 800 planning officials and staff.

**Institute for Environmental Negotiation, University of Virginia**          9/99 – 7/00
Charlottesville, VA
*Associate*
- Coordinated workshops and conducted research for the Chesapeake Bay Commission Bi-State Blue Crab Advisory Committee to develop joint Maryland-Virginia fisheries management of the blue crab.
- Compiled summaries of developments in groundwater management and assessment for the Virginia Department of Environmental Quality Ground Water Protection Steering Committee.
- Wrote grants for the Sustainable Forestry Partnership to fund a reference manual on sustainable forestry certification.
- Critically analyzed the criteria indicators of the Montreal Process for the Roundtable on Sustainable Forestry.

**SKILLS**
| | |
|---|---|
| **Software Applications** | ESRI ArcMap 9.2; Microsoft Word, Excel, Power Point and Access; Photoshop; Pagemaker; Dream Weaver and Netscape Composer |
| **Languages** | Portuguese and Spanish |