UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NEW YORK SMSA LIMITED PARTNERSHIP d/b/a
VERIZON WIRELESS, NEW CINGULAR WIRELESS     Case No. 07 CV 7637
PCS, LLC, SPRINT SPECTRUM L.P., and OMNIPOINT     (Brieant, J.)
COMMUNICATIONS, INC., a wholly owned subsidiary     (Yanthis, M.J.)
of T-MOBILE USA, INC.,

                                       Plaintiffs,

                                       **MUSSO DECLARATION**

      - against-

THE TOWN OF CLARKSTOWN and THE TOWN
BOARD OF THE TOWN OF CLARKSTOWN,

                                        Defendants.
------------------------------------------------------------------X

       MICHAEL P. MUSSO, declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

       1.     I am a Senior Project Engineer of HDR, Inc. (HDR), an engineering and consulting firm. I possess over 15 years' experience in environmental engineering, consulting, and regulatory compliance. I have served and continue to serve as the HDR program manager for wireless telecommunications facility siting projects on behalf of several New York State municipalities.

       2.     In such capacity, I have been project manager for wireless facility siting efforts for the Villages of Rye Brook, Port Chester, Scarsdale, Haverstraw, Goshen, and Sleepy Hollow, the City of Mount Vernon, and the Towns of Greenburgh, Somers, Newburgh, and Marlborough in New York. My responsibilities have included the technical reviews of applications for completeness (FCC, local codes); assessment of coverage and capacity information; analysis of health and safety criteria relating to non-

ionizing electromagnetic radiation consistent with FCC requirements; coordination of field surveys and visual impact analyses; participation at public meetings; and compliance with the Federal Telecommunications Act of 1996. In addition, I have reviewed specific aspects of wireless telecommunication facilities (WTF's), including code/ordinance items, analysis of decommissioning procedures, inventory and inspection of sites, and have developed and managed wireless locational plan studies for the Village of Sleepy Hollow and the Town of Clarkstown.

3. In early 2006, HDR was retained by the Town of Clarkstown (the "Town") to conduct a detailed study and review of issues concerning the proliferation of cell towers and the siting of wireless telecommunications facilities WTF's throughout the Town, and the Town's then-existing Wireless Facilities Law (which had been enacted approximately 10 years earlier).

4. Over the ensuing year, I conducted detailed studies and analyses concerning wireless siting issues affecting the Town. This included a detailed and in-depth process of information and data gathering from the Town's records, available records from the County of Rockland and neighboring municipalities, and available records and input which I requested and was able to obtain, to an extent, from the carriers or carrier representatives.[1]

5. On the basis thereof, I prepared, as the principal author, a comprehensive report and recommendations set forth in a Wireless Siting Plan. The Wireless Siting Plan contains detailed analyses of existing wireless facilities and Town features (e.g., zoning

---

[1] Certain carriers were more responsive than others.

2

districts, land use) and recommendations concerning numerous issues affecting wireless siting determinations, and their treatment under the Town's Wireless Facilities Law.

5. I also participated in several public hearings and work sessions, including with neighboring municipalities, and with attorneys and representatives of several wireless carriers, regarding the Wireless Siting Plan, and concerning proposed amendments to the Town's Wireless Law which were an outgrowth of my studies and recommendations embodied in the Plan.

6. This process ultimately led to proposed amendments to the Town's Wireless Facilities Law, which were enacted and adopted by the Town Board, following extensive public hearings, in July, 2007.

7. In addition to the normal drafting process, and prior to the enactment of the 2007 Amendments, several changes or clarifications to the proposed amendments were specifically made at the request of the carriers in response to the carriers' stated objections and concerns. These changes and clarifications are incorporated into the Wireless Law itself, and are detailed in the accompanying declaration of the Town Attorney.

8. In connection with my studies and recommendations, I became aware that since the Town's original enactment of its Wireless Law in 1996, and during recent years in particular, siting applications had become increasingly more complex. This mirrored my own personal experiences as a wireless consultant for other municipalities, and was to be expected given a series of changing and evolving market forces and changes and deployments of wireless networks and technologies.

9. At the same time, I was made aware, and my studies and analyses confirmed, that over the past several years, it had become increasingly apparent that the Town's then-existing Wireless Law was ill-equipped to address these changing conditions, and that this, in turn, had led to delays and complications in the processing of siting applications under the prior version of the law.

10. My studies and analyses likewise revealed that several of the carriers were submitting coverage maps which contained divergent and sometimes conflicting data, as set forth in the accompanying declaration of the Town Planner, Jose C. Simoes. Once again, this mirrored my own personal experience as a wireless consultant for other municipalities, and was confirmed based on my review of prior applications submitted to the Town, and based on the conflicting and incomplete data and information which the carriers provided to me in response to my requests for relevant coverage maps, data and information, as part of my underlying study.[2]

11. As detailed more fully in the accompanying Declaration of the Town Attorney, the Town's Wireless Law was substantially revamped and updated in 2007, in part as the result of my studies and recommendations, and in furtherance of the Wireless Siting Plan on which it is in-part based.

12. I have reviewed the plaintiffs-carriers' (Carriers) papers in support of their motion for summary judgment. It is apparent to me, although I am not an attorney, that the Carriers are largely contending that the Town is impermissibly attempting to regulate RF signal strength (i.e., wireless operations) and radio frequency (RF) emissions. However, that is incorrect.

---

[2] See n. 1 above.

13. Contrary to the Carriers' assertions, the revamped and updated Wireless Law does <u>not</u> establish minimum or maximum RF signal strength levels and does <u>not</u> attempt to regulate RF emissions levels. Rather, the new law contains <u>baseline</u> data and <u>submission</u> requirements, including with respect to dBm signal strength and RF emissions, in order to (a) permit the Planning Board to make informed, consistent determinations on specific wireless siting applications, including to determine whether or not a genuine coverage gap exists and whether there are available less intrusive means to fill any genuine gaps in coverage with respect to any given application, and (b) to verify anticipated RF emissions levels at locations of general public occupancy.

14. As a professional engineer experienced in wireless consulting, I am very familiar with and sensitive to the limited preemption, including concerning the regulation of RF emissions, contained in the Federal Telecommunications Act of 1996 (the "TCA"). In fact, the TCA is extensively addressed and discussed in the Wireless Siting Plan, and in the 2007 Amendments themselves. Again, contrary to the Carriers' assertions, the new law contains <u>baseline</u> data and <u>submission</u> requirements, including with respect to dBm signal strength and RF emissions (to verify consistency with FCC requirements), to permit the Planning Board to make informed determinations on specific wireless siting applications. It does <u>not</u> establish or regulate maximum or minimum signal strength or RF emissions levels.

15. The amended Wireless Law now contains detailed and objective criteria, including on the basis of a Scoring Matrix and Points System which I assisted the Town to develop. This system, which involves a short pre-application period and a short application period, with short and specific deadlines for the processing and review of

applications, is based on specific and objective criteria. It assigns different categories and different levels of review based on the nature and type of the specific application involved. The system is based on the Town's considerations and preferences to minimize the potential adverse impacts associated with certain types of WTF's (e.g., installation of a new large stand-alone cell tower, as opposed to possible co-location on an existing tower or rooftop installation).

16. In short, armed with actual and meaningful <u>data</u> and <u>information</u> under the new law, the Planning Board, with the assistance of the newly-created Antenna Advisory Board,[3] can now utilize the specific and objective criteria set forth in the amended Wireless Law in order to make informed determinations on wireless siting applications.

17. In addition, I am personally familiar with the underlying issues which led to the So-Ordered Stipulation reached in <u>Omnipoint Communications v. Village of Airmont</u>, Case No. 07-Civ-0473 (S.D.N.Y. Apr. 18, 2007) (Brieant, J.). As discussed in the Town's accompanying Memorandum of Law, the <u>Village of Airmont</u> case involves a So-Ordered Stipulation. It arose out of certain fees that were charged by specific private consultants retained by the Village of Airmont to review a specific wireless application in the Village. The consultants' fees were passed on to the applicant, Omnipoint, who evidently complained that the fees were unreasonable and excessive. Accordingly, the Village agreed not to use those specific consultants in reviewing future wireless applications for the Village. Ironically, HDR and I were retained as the <u>new</u> wireless consultant for the Village of Airmont. Indeed, the Village continues to utilize the service of outside wireless consultants, whose fees are then passed on to the applicants in due

---

[3] <u>See</u> the accompanying declaration of the Town Planner for a more detailed discussion of the new, and purely <u>advisory</u>, role played by the AAB.

6

course, subject to the requirement that the fees are reasonable. This has been my personal experience in other municipalities as well. In other words, the Carriers' attempt to gain mileage by the So-Ordered Stipulation in the <u>Village of Airmont</u> case merely demonstrates and reinforces that the issue of fees, like most if not all of the Carriers' objections, are more properly reviewed and analyzed in the context of specific applications on a case-by-case basis.

18. Lastly, I am advised that that no applications have been filed under the Wireless Law since its enactment in July, 2007. This is unfortunate, since I expect and anticipate that applications will be substantially streamlined and expedited under the new law.

Dated: Pearl River, New York
       March 14, 2008

_____
MICHAEL P. MUSSO