# APPENDIX

## APPENDIX TABLE OF CONTENTS

Tab A ……….Brief of the United States and the Federal Communications Commission as Amicus Curiae in Support of Appellees, Murray v. Motorola, Inc., No. 07-cv-1074 *et. seq.* (D.C. Ct. App. Mar. 31, 2008).

# TAB A

Nos. 07-cv-1074, 07-cv-1075,
07-cv-1076, 07-cv-1078, 07-cv-1079

IN THE DISTRICT OF COLUMBIA COURT OF APPEALS

MICHAEL PATRICK MURRAY, et al.,
Plaintiffs-Appellants,

v.

MOTOROLA INC., et al.,
Defendants-Appellees,

ON APPEAL FROM THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA, CIVIL DIVISION

BRIEF OF THE UNITED STATES AND THE FEDERAL COMMUNICATIONS
COMMISSION AS AMICUS CURIAE IN SUPPORT OF APPELLEES

OF COUNSEL:

MATTHEW B. BERRY
General Counsel
Federal Communications
    Commission
Washington, D.C. 20554

JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney
    General

JEFFREY A. TAYLOR
    United States Attorney

MARK B. STERN
(202) 514-5089
SARANG VIJAY DAMLE
(202) 514-5735
    Attorneys, Appellate Staff
    Civil Division, Room 7217
    U.S. Department of Justice
    950 Pennsylvania Avenue NW
    Washington, D.C.  20530-0001

# TABLE OF CONTENTS

Page

INTERESTS OF THE UNITED STATES . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND PRIOR PROCEEDINGS . . . . . . . . . . 3

    I.    STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . 3

        A.    Wireless Communications and
            Radiofrequency Emissions . . . . . . . . . . . . . 3

        B.    The FCC's Broad Regulatory Authority
            Over Radio Communications. . . . . . . . . . . . 4

        C.    The FCC's Regulation of RF Emissions
            from Cell Phones . . . . . . . . . . . . . . . . 5

    II.  FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    Plaintiffs' Suit is Impliedly Preempted
        by Federal Law . . . . . . . . . . . . . . . . . . . 12

        A.    The Federal Government Occupies The
            Field of Regulating Technical Standards
            for RF Transmissions . . . . . . . . . . . . . . 13

        B.    Plaintiffs' State Law Tort Suit
            Conflicts With Federal Law Concerning
            RF Emissions . . . . . . . . . . . . . . . . . . 15

    II.  Plaintiffs' Arguments Against Federal
        Preemption Lack Merit . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

**Cases:**                                                                  Page

AT&T v. Central Office Tel., Inc.,
   524 U.S. 214 (1998) . . . . . . . . . . . . . . . . . . . 24

Arkansas Elec. Cooperative Corp. v. Arkansas Pub. Serv. Comm'n,
   461 U.S. 375 (1983) . . . . . . . . . . . . . . . . . . 20

Capital Cities Cable, Inc. v. Crisp,
   467 U.S. 691 (1984) . . . . . . . . . . . . . . . 12, 15, 18

Cellular Phone Taskforce v. FCC,
   205 F.3d 82 (2d Cir. 2000) . . . . . . . . . . . . . 16, 19

City of New York v. FCC,
   486 U.S. 57 (1988) . . . . . . . . . . . . . . . . . 15, 22

EMR Network v. FCC,
   391 F.3d 269 (D.C. Cir. 2004),
   cert. denied 545 U.S. 1116 (2005) . . . . . . . . . 16, 19

FCC v. Pottsville Broadcasting Co.,
   309 U.S. 134 (1940) . . . . . . . . . . . . . . . 4, 12, 21

*Geier v. American Honda Motor Co., Inc.,
   529 U.S. 861 (2000) . . . . . . . . . . . . . 2, 17, 18, 24

*Head v. New Mexico Bd. of Examiners in Optometry,
   374 U.S. 424 (1963) . . . . . . . . . . . . . 5, 13, 21, 23

U.S. v. Locke,
   529 U.S. 89 . . . . . . . . . . . . . . . . . . . . . . 24

Medtronic, Inc. v. Lohr,
   518 U.S. 470 (1996) . . . . . . . . . . . . . . . . . . . 2

National Broadcasting Co. v. United States,
   319 U.S. 190 (1943) . . . . . . . . . . . . . . . 4, 12, 21

Pinney v. Nokia, Inc.,
   402 F.3d 430 (4th Cir.),
   cert. denied, 546 U.S. 998 (2005) . . . . . . 3, 11, 20, 21

          
* Authorities chiefly relied upon are marked with an asterisk.

Riegel v. Medtronic, Inc.,
    128 S. Ct. 999 (U.S. Feb. 20, 2008) . . . . . . . . . . . 12

Silkwood v. Kerr-McGee Corp.,
    464 U.S. 238 (1984) . . . . . . . . . . . . . . . . 22, 23

In re Wireless Telephone Radio Frequency Emissions Products
Liability Litigation,
    327 F. Supp. 2d 554 (D. Md. 2004) . . . . . . . . . . . . 9

Statutes:

47 U.S.C. § 151 . . . . . . . . . . . . . . . . . . . . . 4, 14

47 U.S.C. § 152(a) . . . . . . . . . . . . . . . . . . . 13, 21

47 U.S.C. § 301 . . . . . . . . . . . . . . . . . . . . . . 21

47 U.S.C. § 332 . . . . . . . . . . . . . . . . . . . . . . 21

47 U.S.C. § 332(a) . . . . . . . . . . . . . . . . . . . . 4, 13

47 U.S.C. § 332(c)(3)(A) . . . . . . . . . . . . . . . . . . 23

Communications Act of 1934,
    Pub. L. No. 73-416, 48 Stat. 1064 . . . . . . . . . . . . 4

Telecommunications Act of 1996, § 601,
    110 Stat. 56 . . . . . . . . . . . . . . . . . . . . 24, 25

Telecommunications Act of 1996, § 704(b),
    110 Stat. 152 . . . . . . . . . . . . . . . . . . . . 5, 22

National Environmental Policy Act of 1969 (NEPA),
    42 U.S.C. § 4321 et seq . . . . . . . . . . . . . . . . . 5

Radio Act of 1927, Pub. L. No. 69-632, 44 Stat. 1162 . . . . 4

Regulations:

47 C.F.R. § 1.1307(b) . . . . . . . . . . . . . . . . . . 6, 15

47 C.F.R. § 1.1307(b)(2) . . . . . . . . . . . . . . . . . . 21

47 C.F.R. § 1.1308 . . . . . . . . . . . . . . . . . . . . . 6

---

\* Authorities chiefly relied upon are marked with an asterisk.

47 C.F.R. § 2.801 . . . . . . . . . . . . . . . . . . 6

47 C.F.R. § 2.803 . . . . . . . . . . . . . . . . . . 6

47 C.F.R. § 2.1091 . . . . . . . . . . . . . . . . . 15

47 C.F.R. § 2.1093 . . . . . . . . . . . . . . . 6, 21

Rules:

D.C. R. App. P. 29(a) . . . . . . . . . . . . . . . . 1

Legislative Materials:

H.R. Rep. No. 104-204(I) (1995), reprinted in
    1996 U.S.C.C.A.N. 10 . . . . . . . . . . . . . . 6, 22

Other Authorities:

EMR Network Petition for Inquiry,
    18 F.C.C. Rcd 16822 (2003) . . . . . . . . . . . . . . 19

＊Guidelines for Evaluating the Environmental Effects of
Radiofrequency Radiation, 11 F.C.C. Rcd 15123 (1996),
    "RF Order" . . . . . . . . . . . . . . . . 5, 6, 7, 8, 15, 16

＊Guidelines for Evaluating the Environmental Effects of
    Radiofrequency Radiation, on reconsideration, 12 FCC Rcd 13494
    (1997), "Second RF Order" . . . . . . . . . 5, 7, 17, 19, 20

In re Use of the Bands 825-845 MHz and 870-890 MHz for Cellular
    Communications Systems (Cellular Service Order),
    86 F.C.C.2d 469 (1981) . . . . . . . . . . . . . . . . . 13

Responsibility of the FCC to Consider Biological Effects of
    Radiofrequency Radiation When Authorizing the Use of
    Radiofrequency Devices, 100 F.C.C.2d 543 (1985) . . . . . . 5

---

* Authorities chiefly relied upon are marked with an asterisk.

IN THE DISTRICT OF COLUMBIA COURT OF APPEALS

———————

Nos. 07-cv-1074, 07-cv-1075,
07-cv-1076, 07-cv-1078, 07-cv-1079

———————

MICHAEL PATRICK MURRAY, et al.,
Plaintiffs-Appellants,

v.

MOTOROLA INC., et al.,
Defendants-Appellees,

———————

ON APPEAL FROM THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA, CIVIL DIVISION

———————

BRIEF OF THE UNITED STATES AND THE FEDERAL COMMUNICATIONS
COMMISSION AS AMICUS CURIAE IN SUPPORT OF APPELLEES

———————

## INTERESTS OF THE UNITED STATES

The plaintiffs in this case are wireless phone users who have developed various medical afflictions, which they allege were caused by radiofrequency (RF) emissions from their wireless phones. They have sued defendants, wireless phone manufacturers and sellers and other related entities, under a number of state law tort theories, all of which are ultimately premised on their assertion that the RF emissions from wireless phones are unreasonably dangerous.

This Court's rules provide that "[t]he United States * * * or an officer or agency thereof * * * may file an amicus curiae brief without the consent of the parties or leave of court." D.C. R. App. P. 29(a). The Federal Communications

Commission has an important regulatory interest in the question of whether federal law preempts state-law claims that the RF emissions from wireless telephones are unreasonably dangerous. The federal government, through the FCC, has long exercised sole responsibility for regulating technical standards with respect to RF emissions generally and wireless telephone service in particular. The FCC accordingly has a strong interest in ensuring the correct delineation of federal and state authority and in preserving its ability to establish and maintain nationally uniform standards for wireless telephones.

Moreover, the Supreme Court has held that a federal "agency's own views" on preemption in cases like this one "should make a difference." Geier v. American Honda Motor Co., 529 U.S. 861, 883 (2000). In this case, as in Geier, "Congress has delegated [to a federal agency] authority to implement" a statute; "the subject matter is technical; and the relevant history and background are complex and extensive." Ibid. The FCC, which possesses "a thorough understanding of its own regulation and its objectives," ibid., "is uniquely qualified to determine" whether lawsuits of this sort will pose an obstacle to the achievement of federal policy objectives, Medtronic, Inc. v. Lohr, 518 U.S. 470, 496 (1996). In view of these factors, this Court should consider the FCC's views before deciding whether plaintiffs' claims in this case are preempted.

STATEMENT OF FACTS AND PRIOR PROCEEDINGS

I.    STATUTORY AND REGULATORY BACKGROUND

A.    Wireless Communications and Radiofrequency Emissions

Nearly every commonly-used form of wireless communication –
from television, radio, and cellular telephone service, to garage
door openers, remote-controlled cars, and cordless phones – uses
"radiofrequency" electromagnetic waves to send and receive
signals making up such communication.  The term "radiofrequency"
or "RF" refers generally to the portion of the electromagnetic
spectrum that is used in "over the air" communications.  Certain
types of communications, like television broadcasting, require
high-power RF signals to be effective.  Others, like garage door
openers and cordless phones, use relatively low power signals.

This lawsuit relates to radiofrequency emissions by wireless
handheld telephones (commonly referred to as "cell phones" and
distinct from "car phones," which are permanently mounted in a
vehicle).  Cell phones use low power RF signals to transmit a
signal to fixed "base stations."  Those base stations send the
signal through to the voice or data network.  The base station
transmits any return voice or data signal via RF waves back to
the cell phone.  See generally Pinney v. Nokia, Inc., 402 F.3d
430, 439-40 (4th Cir.), cert. denied, 546 U.S. 998 (2005).

B.    The FCC's Broad Regulatory Authority Over Radio
      Communications.

In the Communications Act of 1934, Congress provided that

3

the development of a "rapid, efficient, Nation-wide, and world-wide wire and radio communication service" required "centralizing authority" in a federal agency, the FCC. 47 U.S.C. § 151. The FCC thus has prime responsibility for "execut[ing] and enforc[ing]" federal communications policies, including "promoting safety of life and property through the use of wire and radio communications." Ibid.

The federal government has particularly long-standing and expansive authority over radiofrequency communications generally. See Radio Act of 1927, Pub. L. No. 69-632, 44 Stat. 1162; Communications Act of 1934, Pub. L. No. 73-416, 48 Stat. 1064; National Broadcasting Co. v. United States, 319 U.S. 190, 217 (1943) (noting the FCC has been given "comprehensive powers to promote and realize the vast potentialities of radio"); FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 138 (1940) (finding that the Communications Act "expresses a desire on the part of Congress to maintain, through appropriate administrative control, a grip on the dynamic aspects of radio transmission").

Congress has given the FCC specific regulatory authority to regulate cell phone communications. For example, the Communications Act provides that "[i]n taking actions to manage the spectrum to be made available for use by private mobile services," the FCC must consider several factors, including "whether such actions will * * * promote the safety of life and property." 47 U.S.C. § 332(a).

The regulatory powers of the FCC reach their zenith with respect to the technical standards for RF communications. The Supreme Court has noted that the FCC's regulation of "technical matters" such as frequency allocation is "clearly exclusive" of state and local regulation.  <u>Head</u> v. <u>New Mexico Bd. of Examiners in Optometry</u>, 374 U.S. 424, 430 n.6 (1963).

       C.   **The FCC's Regulation of RF Emissions from Cell Phones**

Among the technical standards that the FCC has promulgated for radio communications are regulations to limit human exposure to excessive levels of RF emissions from various transmitting sources, including cell phones.  <u>See</u> Responsibility of the FCC to Consider Biological Effects of Radiofrequency Radiation When Authorizing the Use of Radiofrequency Devices, 100 FCC 2d 543 (1985); Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation, 11 FCC Rcd 15123 (1996) ("RF Order"), <u>on reconsideration</u>, 12 FCC Rcd 13494 (1997) ("Second RF Order").

The FCC's cell phone RF exposure regulations were implemented under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 <u>et</u> <u>seq</u>. and the Communications Act, and were mandated by Congress in the Telecommunications Act of 1996, § 704(b), 110 Stat. 152 (directing the FCC to "complete action * * * to prescribe and make effective rules regarding the environmental effects of radio frequency emissions").  In requiring the FCC to promulgate regulations regarding the effects of RF emissions, Congress noted that "[a] high quality national

wireless telecommunications network cannot exist if each of its components must meet different RF standards in each community," and contemplated that the FCC's RF standards would "contain adequate, appropriate and necessary levels of protection to the public." See H.R. Rep. No. 104-204(I), at 95 (1995), as reprinted in 1996 U.S.C.C.A.N. 10, 61-62.

The FCC's regulations require that all devices that emit RF radiation, including cell phones, be authorized by the agency before they can be marketed or sold in the United States. See 47 C.F.R. §§ 2.801, 2.803. As part of the equipment authorization process for cell phones, an applicant must certify that the equipment will not "cause human exposure to levels of radiofrequency radiation in excess of" certain specified limits.[1] 47 C.F.R. § 1.1307(b); see also 47 C.F.R. § 2.1093 (detailing the RF exposure limits for cell phones). "Technical information" demonstrating compliance with those limits "must be submitted to the Commission upon request." 47 C.F.R. § 1.1307(b). In the absence of such a certification, the applicant must prepare a detailed "Environmental Assessment" that explains "the environmental consequences" of equipment authorization. 47 C.F.R. §§ 1.1307(b); 1.1308.

The FCC's RF exposure standards "represent the best

---

[1] The FCC's exposure limits for portable devices, including cell phones, are quantified in terms of specific absorption rate (SAR), which is "a measure of the rate of RF energy absorption." RF Order ¶ 3, 11 FCC Rcd at 15125.

scientific thought." RF Order ¶ 168, 11 FCC Rcd at 15184. The
FCC has concluded that its standards "will protect workers and
the general public from potentially harmful RF emissions due to
FCC-regulated transmitters," Id. ¶ 28, 11 FCC Rcd at 15135, while
"provid[ing] a proper balance between the need to protect the
public and workers from exposure to excessive RF electromagnetic
fields and the need to allow communications services to readily
address growing marketplace demands." Second RF Order ¶ 29, 12
FCC Rcd at 13505.

    In developing the RF exposure limits, the FCC received
submissions from over 100 interested parties, as well as a number
of federal agencies with particular expertise in environmental,
health, and safety issues, including the Environmental Protection
Agency (EPA), the Food and Drug Administration (FDA), the
Occupational Safety and Health Administration (OSHA), and the
National Institute for Occupational Safety and Health (NIOSH).
RF Order ¶¶ 46-61, 11 FCC Rcd at 15140-46. The FCC "place[d]
special emphasis on the recommendations and comments of federal
health and safety agencies because of their expertise and
responsibilities with regard to health and safety matters."
Second RF Order ¶ 39, 12 FCC Rcd at 13508.

    The Commission has acknowledged that "research and analysis
relating to RF safety and health is ongoing, and we expect
changes in recommended exposure limits will occur in the future
as knowledge increases in this field." RF Order ¶ 4, 11 FCC Rcd

at 15124.  The Commission therefore has continued to cooperate "with industry and with the various agencies and organizations with responsibilities in this area in order to ensure that our guidelines continue to be appropriate and scientifically valid." Ibid.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiffs allege brain injuries as a result of exposure to RF radiation emitted by their cell phones.  They brought suit in D.C. Superior Court, seeking damages from cell phone manufacturers and cell phone service providers, among others, under a variety of state law theories.  According to the Superior Court, plaintiffs' core allegation is that RF emissions from cell phones that otherwise complied with FCC regulations were nonetheless unreasonably dangerous.

Plaintiffs urge that their complaints also included allegations that their injuries were caused by cell phones that did not comply with the FCC's RF emission limits.  Appellant's Br. at 8.  The Superior Court found no such allegation in plaintiffs' complaints, concluding that the "present lawsuits are not based upon instances of non-compliance with existing federal standards or regulations."  Op. at 55-56 (emphasis in original). The government takes no position on whether plaintiffs' complaints are properly read to encompass claims based on non-compliance with federal regulations, and limits its discussion here to the allegations found by the Superior Court.

Before the Superior Court,[2] defendants moved to dismiss, urging that the suits were preempted by the Communications Act, which gave the FCC the authority to regulate the sale and distribution of cell phones, and the agency's regulations, in particular the RF Order and Second RF Order.  The FCC filed an amicus brief supporting defendants' preemption arguments.

The Superior Court held that plaintiffs' claims were both expressly and impliedly preempted by federal law.  This appeal followed.

### SUMMARY OF ARGUMENT

Plaintiffs allege that exposure to RF radiation from their cell phones has caused them various brain injuries, and have sued cell phone manufacturers and related entities under a number of state law tort theories.  Insofar as this Court agrees with the Superior Court that plaintiffs' complaints are not based on instances of non-compliance with federal regulations, the United States supports dismissal of plaintiffs' suit on preemption grounds.

A. 1. Plaintiffs' claims of injury based on exposure to RF emissions from cell phones will inevitably require courts and juries in the District of Columbia to make policy decisions regarding appropriate technical standards for radiofrequency

---

[2] Defendants earlier had removed this suit to federal court; the district court found no basis for removal jurisdiction.  See In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation, 327 F. Supp. 2d 554 (D. Md. 2004).

9

communications.  But, as the Supreme Court has recognized,
Congress has determined that such policy judgments are within the
exclusive jurisdiction of the federal government.  The states
have no authority to regulate in that occupied field.

     2.  Plaintiffs' state law claims also conflict with the
Commission's RF exposure regulations.  Congress required the FCC
to promulgate those regulations with the understanding that the
standards would be adequate to protect the public.  In fulfilling
that congressional mandate, the FCC took into account a broad
range of interests, including the views of coordinate federal
agencies with expertise in health and safety matters.  The
Commission has concluded that its standards are adequate to
protect the health and safety of the public, based on the best
available scientific evidence.  The Commission has declined to
set more stringent RF exposure limits, in light of the lack of
scientific evidence demonstrating a need for further limits and
the potential for such limits to impede the development of
efficient, nation-wide wireless communications services.

     Plaintiffs' suit strikes at the heart of the Commission's
policy determinations.  In claiming that the FCC standards are
insufficient to protect the health and welfare of the general
public, plaintiffs are seeking, via state law tort claims, to
impose requirements on RF emissions from cell phones beyond those
imposed by the FCC.  If plaintiffs' suit is permitted to proceed
and is successful, the stricter state law standard will upset the

10

balance struck by the Commission between protecting the health and welfare of the general public and encouraging the development of wireless technologies.

B.  Plaintiffs' argument that their suit is not preempted because it is based on supposedly unregulated "non-ionizing, non-heat effects" of RF radiation falls wide of the mark. Adjudication of such claims by a state court would no less interfere with the federal government's exclusive role in regulating technical matters concerning radio communications, including RF emissions.  Moreover, the FCC has expressly declined to regulate RF emissions based on such effects, finding little scientific basis for doing so.  Permitting plaintiffs' claims to go forward as to "non-ionizing, non-heat effects" of RF radiation would thus clearly conflict with the agency's policy judgment.

Plaintiffs' reliance on <u>Pinney</u> v. <u>Nokia</u>, 402 F.3d 430 (4th Cir. 2005), is also unavailing.  That decision is not binding on this Court, and its reasoning is fundamentally flawed.  The <u>Pinney</u> court failed entirely to consider the preemptive effect of the FCC's RF exposure regulations, and for that reason it should be disregarded.

ARGUMENT

I.  **Plaintiffs' Suit is Impliedly Preempted by Federal Law.**

The Supreme Court has recognized that federal law impliedly preempts state law in two situations.  First, state law is

11

preempted when federal law "occup[ies] an entire field of regulation," leaving no room for state participation. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699 (1984). Second, when federal and state law conflict because compliance with both is impossible or state law would "stand[] as an obstacle to the accomplishment and execution" of a valid federal policy, federal law must prevail. Ibid. (citation and internal quotation marks omitted). State lawsuits based on common law duties are susceptible to preemption by federal law. See Riegel v. Medtronic, Inc., 128 S.Ct. 999, 1007-08 (U.S. Feb. 20, 2008). Plaintiffs' suit was properly dismissed on both "field" preemption and "conflict" preemption grounds.[3]

## A.   The Federal Government Occupies The Field of Regulating Technical Standards for RF Transmissions.

The federal government's presence in the regulation of radio transmission has been predominant for over eighty years. See generally National Broad. Co., 319 U.S. at 210-14 (summarizing federal regulatory history). The Supreme Court has long noted the FCC's expansive jurisdiction with respect to radio communications. See National Broadcasting Co., 319 U.S. at 217 (noting the FCC has been given "comprehensive powers to promote and realize the vast potentialities of radio"); Pottsville Broadcasting Co., 309 U.S. at 138 (finding that the

_____

[3] The government takes no position on whether provisions of the Communications Act expressly preempt plaintiffs' suit.

Communications Act "expresses a desire on the part of Congress to maintain, through appropriate administrative control, a grip on the dynamic aspects of radio transmission"). As to "technical matters" concerning radio communications, such as frequency allocation, the Supreme Court has recognized that federal regulation is "clearly exclusive" of state and local regulation. Head, 374 U.S. at 430 n.6.

The federal government's exclusive authority over technical aspects of radio communications is confirmed by the provisions of the Communications Act. The FCC is solely responsible for "licensing and regulating" the RF spectrum and devices that transmit RF signals. 47 U.S.C. § 152(a). Section 301 of the Act provides that the federal government shall "maintain the control * * * over all the channels of radio transmission." With respect to cell phone service in particular, the Communications Act provides that "[i]n taking actions to manage the spectrum to be made available for use by private mobile services," the FCC must consider several factors, including "whether such actions will * * * promote the safety of life and property." 47 U.S.C. § 332(a).

Consistent with these statutory provisions, the FCC has specifically "assert[ed] federal primacy over the areas of technical standards * * * for cellular service." In re Use of the Bands 825-845 MHz and 870-890 MHz for Cellular Communications Systems (Cellular Service Order) ¶ 82, 86 FCC 2d 469, 505 (1981).

13

An "essential objective" of the Commission has been to ensure that "cellular service [is] designed to achieve nationwide compatibility." Id. ¶ 79, 86 F.C.C.2d at 504. The Commission has thus long taken the position that "state licensing requirements adding to or conflicting with [federal standards] could frustrate federal policy." Id. ¶ 82, 86 F.C.C.2d at 505.

Plaintiffs' state law tort suit clearly interferes with the federal government's exclusive authority to set technical standards for RF communications and regulate RF transmissions used to provide cell phone service. As the Superior Court explained, the essential element of plaintiffs' lawsuit is their allegation that exposure to RF radiation from cell phones that were otherwise compliant with FCC regulations caused their various injuries. Op. at 11. If plaintiffs are successful in that suit, it would necessarily require cell phone manufacturers to adhere to a particular RF exposure standard with respect to cell phones used in the District of Columbia. Cell phone service providers would also be forced to accommodate such cell phones. Should suits like plaintiffs' be permitted to proceed in other states, the result could be a patchwork of technical standards that would contravene the federal policy of creating a "rapid, efficient, Nation-wide, and world-wide * * * radio communication service." 47 U.S.C. § 151.

14

B.   **Plaintiffs' State Law Tort Suit Conflicts With Federal Law Concerning RF Emissions.**

Even if there were any doubt that the federal government has "occupied the field" of regulating technical standards for RF communications, plaintiffs' state law tort suit would still be preempted because the suit plainly conflicts with the FCC's RF exposure regulations.   Federal regulations that are validly promulgated have the same preemptive effect as federal statutes. Capital Cities Cable, 467 U.S. at 699.   The statutorily authorized regulations of an agency therefore "will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." City of New York v. FCC, 486 U.S. 57, 64 (1988).

Consistent with its obligations under NEPA and the Communications Act, including a specific Congressional directive in Section 704(b) of the Telecommunications Act of 1996, the FCC has promulgated specific and detailed RF cell phone exposure regulations that "represent[] the best scientific thought," RF Order ¶ 168, 11 FCC Rcd at 15184. See 47 C.F.R. §§ 1.1307(b); 2.1091.   Those regulations provide that in the absence of an environmental assessment, the Commission will not authorize the sale or distribution of any wireless telephone in the United States that does not comply with its RF safety standards.   Ibid.   The FCC has determined that wireless phones that do comply with its RF standards are safe for use by the

15

general public and may be sold in the United States.  See RF

Order ¶ 1, 11 FCC Rcd at 15147-48.

The FCC issued its RF exposure standard for cell phones

after a lengthy and comprehensive rulemaking in which interested

parties on all sides participated.  Federal agencies that have

specialized expertise in health matters also participated in the

FCC's rulemaking and endorsed the agency's RF standards as

adequate to protect the public against harmful RF emissions.  RF

Order ¶¶ 15-20, 11 FCC Rcd at 15129-31.

On judicial review, the Second Circuit rejected arguments

that the FCC should have adopted stricter RF standards,

concluding that the FCC had acted within the scope of its

policymaking discretion in establishing its RF standards and in

relying on the recommendations of other expert federal agencies.

Cellular Phone Taskforce v. FCC, 205 F.3d 82, 90-92 (2d Cir.

2000).  Further, as both the Second and D.C. Circuits have

recognized, the FCC has a "mechanism in place for accommodating

changes in scientific knowledge" through its ongoing coordination

with other federal agencies and other expert bodies.  See EMR

Network v. FCC, 391 F.3d 269, 273 (D.C. Cir. 2004), cert. denied

545 U.S. 1116 (2005); Cellular Phone Taskforce, 205 F.3d at

90-91.

As plaintiffs ultimately concede, their suit seeks to impose

16

a stricter standard for RF emissions than required by the FCC.[4]
See Appellant's Br. at 43 ("[T]he FCC did not restrict nor
prohibit Defendants from providing additional safeguards or
information to consumers, and thus the FCA does not preempt
Plaintiffs' claims."). Contrary to plaintiffs' suggestion,
however, the Commission's RF exposure standards are not simply a
minimum requirement that the states are free to supplement.
Rather, as the Commission has explained, those standards set the
"proper balance between the need to protect the public and
workers from exposure to excessive RF electromagnetic fields and
the need to allow communications services to readily address
growing marketplace demands." Second RF Order ¶ 29, 12 FCC Rcd
at 13505. Plaintiffs' success in this lawsuit would necessarily
upset that balance and thus would contravene the policy judgments
of the FCC.

This case is thus analogous to Geier v. American Honda Motor
Co., Inc., 529 U.S. 861 (2000). Geier involved a state tort suit
against an auto manufacturer for failing to place air bags in
plaintiff's car. The manufacturer, however, had complied with a
federal regulation that did not require air bags to be placed in
every car, but rather only required some form of a passive

---

[4] As explained above, plaintiffs assert that their
complaints also included allegations that their injuries were
caused by cell phones that did not comply with the FCC's RF
emission regulations. See supra at 8. The government here takes
no position on whether plaintiffs' complaints in fact contain
such allegations.

17

restraint system.  As the Court explained, the federal regulation
was based on the agency's policy judgment that "safety would best
be promoted" by a mix of "alternative protection systems" in
cars, rather than "one particular system in every car."  Id. at
881 (internal quotations omitted).  The Court found that
plaintiffs' tort suit would have created a state law duty that
would stand as an obstacle to that policy judgment, and thus held
that the suit was preempted.

As in Geier, here the FCC has reached a particular policy
judgment – that its standard for RF emissions strikes the proper
balance between protecting the health and safety of the general
public and allowing the spread of wireless communications
services.  Plaintiffs' suit would create a state law duty that
"stands as an obstacle to the accomplishment and execution" of
that policy, Capital Cities Cable, Inc., 467 U.S. at 699, and so
is preempted.

II.  **Plaintiffs' Arguments Against Federal Preemption Lack Merit.**

Plaintiffs raise a number of arguments against federal
preemption of their claims.  As explained below, those arguments
lack merit.

A.  Plaintiffs allege that their injuries were caused in
part by "the non-regulated portion of RF emissions, specifically
the non-ionizing, non-heat effect radio frequency radiation."
Appellant's Br. at 29.  Plaintiffs urge that because the FCC does

18

not regulate RF emission standards based on such effects, their suit is not preempted by federal law.  Ibid.

Even if plaintiffs were correct that the FCC has not made any policy judgment regarding supposed "non-ionizing, non-heat effect[s]," plaintiffs' state tort lawsuit would still interfere with the federal government's exclusive authority to regulate the RF transmissions used to provide cell phone service, and would still conflict with the FCC's RF emission regulations.

In any event, plaintiffs are wrong to suggest that the FCC has made no policy judgment concerning such effects.  The FCC has consistently rejected proposals to regulate emissions based on "non-thermal effects" or the supposed "hypersensitiv[ity]" of certain individuals to "non-ionizing electromagnetic fields." Second RF Order ¶¶ 26, 28, 31, 12 FCC Rcd at 13505; see also EMR Network Petition for Inquiry ¶ 12, 18 FCC Rcd 16822, 16827 (2003).  The FCC has concluded that issues such as non-thermal effects of RF emissions and hypersensitivity to non-ionizing radiation are "controversial," and that "expert organizations and federal agencies with responsibilities for health and safety" had found no reliable scientific basis for imposing stricter standards.  Second RF Order ¶ 31, 12 FCC Rcd at 13505.  Both the D.C. Circuit and the Second Circuit have rejected challenges to the FCC's decision not to impose stricter standards based on such effects.  See EMR Network v. FCC, 391 F.3d 269  (D.C. Cir. 2004); Cellular Phone Taskforce v. FCC, 205 F.3d 82 (2d Cir. 2000).

19

"[A] federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision to regulate." Arkansas Elec. Cooperative Corp. v. Arkansas Pub. Serv. Comm'n, 461 U.S. 375, 384 (1983). The Commission declined to impose stricter standards for RF emissions based on effects that are scientifically controversial, and "conclud[ed] that the RF exposure limits adopted in the [RF Order] are appropriate because they address [safety] concerns and, at the same time, allow applicants and licensees to meet the growing marketplace demand for communications services." Second RF Order ¶ 39, 12 FCC Rcd at 13508. Permitting states – through the mechanism of tort suits – to regulate emissions based on a contrary view of "controversial" scientific issues would contravene this federal policy determination, and thus the decision not to regulate should be given preemptive effect.

B.  Plaintiffs also place great weight on the Fourth Circuit's decision in Pinney v. Nokia, 402 F.3d 430 (4th Cir. 2005). Pinney involved a suit against cell phone manufacturers claiming that, absent a "hands-free" headset, RF emissions from cell phones created an unreasonable risk of injury to the user under state law. The suit sought injunctive relief that would require the manufacturers to provide headsets with all cell phones. Though the district court found the suit to be preempted

20

by federal law, the court of appeals reversed.  Id. at 457.

Pinney is not binding on this Court, and the Superior Court correctly rejected the Pinney court's reasoning.  In finding no field preemption of plaintiffs' claims, the Pinney court erroneously focused on only a single provision of the Communications Act, 47 U.S.C. § 332, finding based on that provision alone that there was no "congressional objective of achieving preemptive national RF radiation standards for wireless telephones."  Id. at 457.  The Pinney court did not cite, let alone address, any other provision of the Communications Act, e.g., 47 U.S.C. §§ 152(a), 301, or the Supreme Court's decisions in National Broadcasting Co., 319 U.S. 190; Pottsville Broadcasting Co., 309 U.S. 134, and Head, 374 U.S. 424, all of which, as explained above, demonstrate that the federal government has occupied the field with respect to regulation of the technical standards for radio communications.

Furthermore, in rejecting the claim of conflict preemption, the Fourth Circuit essentially ignored the FCC's RF emissions regulations.  See 47 C.F.R. §§ 1.1307(b)(2); 2.1093.  It did so on the ground that the "FCC's RF radiation standards for wireless telephones were not promulgated pursuant to a mandate contained in § 332 of the [Communications Act], but rather pursuant to the National Environmental Policy Act's mandate that all agencies assess the environmental impact of their actions."  402 F.3d at 457.  That reasoning is flawed in several respects.  First, the

21

FCC regulations were promulgated to comply with NEPA, but were mandated by Congress in the Telecommunications Act of 1996.  See § 704(b), 110 Stat. at 152.  Congress contemplated that the FCC's RF standards would "contain adequate, appropriate and necessary levels of protection to the public."  See H.R. Rep. No. 104-204(I), at 95 (1995), reprinted in 1996 U.S.C.C.A.N. 10, 62.

Second, even ignoring the clear congressional mandate in the Telecommunications Act, the Fourth Circuit's reasoning reflects a mistaken view that the FCC regulations lacked preemptive effect because they were promulgated pursuant to NEPA.  It is axiomatic that validly promulgated federal regulations will preempt state laws that conflict with them.  See City of New York, 486 U.S. at 64.  The particular provenance of those regulations is immaterial.  By failing to consider the irreconcilable conflict between the FCC's regulations and the state tort claims, the Fourth Circuit erred in concluding that federal law did not preempt the lawsuit.

C.  Plaintiffs also erroneously rely on the Supreme Court's decision in Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984).  The Court in Silkwood held that a state punitive damages award against the operator of a federally-licensed nuclear facility based on the operator's alleged mishandling of plutonium was not preempted by federal law.  But the Court stressed that "the only Congressional discussion concerning the relationship between the Atomic Energy Act and state tort remedies indicates that Congress

22

assumed that such remedies would be available." Id. at 251-52.

Here, by contrast, there is no similar indication that Congress intended state law tort suits to supplement the federal government's role in regulating the technical standards for RF communications. Indeed, as the Supreme Court has noted, the FCC's regulation of "technical matters" is "clearly exclusive" of state and local regulation. Head, 374 U.S. at 430 n.6.

D. Plaintiffs also rely on various savings clauses in the Communications Act to avoid dismissal on preemption grounds. See 47 U.S.C. §§ 332(c)(3)(A), 414. These provisions do not save plaintiffs' suit.

Section 332(c)(3)(A) provides that: "No state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." That provision expressly preempts state rate and entry regulation, while making clear that this particular express preemption provision does not cover state regulation of the "terms and conditions" of service. Nothing in that provision alters the preemptive effect of other portions of the Communications Act or gives states any ability to regulate radiofrequency communications, including RF emissions standards.

Section 414 provides: "Nothing in this chapter * * * shall in any way abridge or alter the remedies now existing at common

23

law or by statute, but the provisions of this chapter are in addition to such remedies." The Supreme Court has held that § 414 "preserves only those rights that are not inconsistent with the statutory * * * requirements." AT&T v. Central Office Tel., Inc., 524 U.S. 214, 227 (1998). As explained previously, the claims asserted by plaintiffs in this case are in fact inconsistent with the Communications Act.

Furthermore, the Supreme Court has made clear that a "saving clause * * * does not bar the ordinary working of conflict pre-emption principles." Geier, 529 U.S. at 869. Indeed, the Supreme Court has "decline[d] to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law." Locke, 529 U.S. at 106-107. In other words, where principles of conflict preemption lead to the conclusion that a state tort suit stands as an obstacle to federal policies embodied in a validly promulgated regulation, the tort suit is preempted notwithstanding the existence of a general savings clause. Geier, 529 U.S. at 871-72. Plaintiffs' suit, as explained above, stands as an obstacle to the federal policies underlying the FCC's RF emission regulations, and therefore is preempted by federal law.

Plaintiffs also erroneously contend that § 601 of the Telecommunications Act of 1996, 110 Stat. 56, 143, "precludes a finding of implied preemption with respect to Plaintiffs' state law claims." Appellant's Br. at 40. That provision only states

24

that the particular amendments to the Communications Act made by the Telecommunications Act of 1996 "shall not be construed to modify, impair, or supersede Federal State or local law unless expressly so provided." § 601, 110 Stat. at 143. But, as explained above, the federal government has maintained exclusive authority over technical matters concerning radio communications for over eighty years; the relevant provisions of the Communications Act long predate the amendments made by the 1996 Act. Given that § 601 provides as well that the 1996 Act is not meant to impliedly "modify, impair, or supersede <u>Federal</u> * * * law," the provision is better read to simply confirm that the federal government continues to occupy the field.

CONCLUSION

For the foregoing reasons, the judgment of the Superior Court should be affirmed.

Respectfully submitted,

OF COUNSEL:

MATTHEW B. BERRY
  <u>General Counsel</u>
  <u>Federal Communications</u>
    <u>Commission</u>
  <u>Washington, D.C. 20554</u>

JEFFREY S. BUCHOLTZ
<u>Acting Assistant Attorney General</u>

JEFFREY A. TAYLOR
<u>United States Attorney</u>

MARK B. STERN
(202) 514-5089
SARANG VIJAY DAMLE
(202) 514-5735
<u>Attorneys, Appellate Staff</u>
<u>Civil Division, Room 7217</u>
<u>U.S. Department of Justice</u>
<u>950 Pennsylvania Avenue NW</u>
<u>Washington, D.C.  20530-0001</u>

MARCH 2008

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2008, I filed and served the foregoing brief by causing an original and three copies to be sent to this Court, and by causing copies to be served upon the following counsel by the method indicated below:

By Federal Express Overnight:

        Jeffrey B. Morganroth
        Mayer Morganroth
        MORGANROTH & MORGANROTH
        3000 Town Center, Suite 1500
        Southfield, MI 48075

        Sheldon L. Miller
        LAW OFFICES OF SHELDON L. MILLER, PC
        31731 Northwestern Hwy., Suite 280 West
        Farmington Hills, MI 48334

        Joanne L. Suder
        THE SUDER LAW FIRM, P.A.
        210 E. Lexington St., Suite 100
        Baltimore, MD 21202

        Counsel for the Plaintiffs-Appellants


By hand-delivery and electronic mail:

        Joshua S. Turner
        Wiley Rein LLP
        1776 K St., NW
        Washington, DC  20006
        202 719 4807
        jturner@wileyrein.com

        Counsel for Motorola, Inc. (accepting service on behalf
        of all defendants-appellees, by agreement)


                                            Sarang Vijay Damle