UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NEW YORK SMSA LIMITED PARTNERSHIP d/b/a
VERIZON WIRELESS, NEW CINGULAR WIRELESS
PCS, LLC, SPRINT SPECTRUM L.P., and OMNIPOINT
COMMUNICATIONS, INC., a wholly owned subsidiary
of T-MOBILE USA, INC.,

         Plaintiffs,

- against -

THE TOWN OF CLARKSTOWN and THE TOWN
BOARD OF THE TOWN OF CLARKSTOWN,

         Defendants.
----------------------------------------------------------------X

Case No. 07 CV 7637
(Brieant, J.)
(Yanthis, M.J.)

**MUSSO REPLY DECLARATION**

  MICHAEL P. MUSSO, declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

  1. I am a New York licensed professional engineer, and Senior Project Engineer of HDR, Inc. (HDR). I have served and continue to serve as the HDR program manager for numerous wireless telecommunications facility siting projects, and as such, I have been project manager for wireless facility siting efforts for the Villages of Rye Brook, Port Chester, Scarsdale, Haverstraw, Goshen, and Sleepy Hollow, the City of Mount Vernon, and the Towns of Greenburgh, Somers, Newburgh, and Marlborough in New York. I respectfully submit this reply declaration to briefly explain the FCC document, A Local Government Official's Guide to Transmitting Antenna RF Emission Safety: Rules, Procedures, and Practical Guidance (June 2, 2000) (the "Guide"), upon which the Carriers continue to rely. A copy of the Guide (which is published online at:

http://wireless.fcc.gov/siting/FCC_LSGAC_RF_Guide.pdf) is annexed hereto for the Court's convenience as Exhibit A.

2. By virtue of my expertise and experience in this area, I am aware of and familiar with the FCC's Guide and accompanying FCC bulletins and FCC materials. Succinctly stated, there is nothing in the Town's Wireless Law which is inconsistent with the Guide, or any of the FCC bulletins or FCC materials.

3. The Guide is meant to be just that – a Guide – as opposed to a step-by-step Standard or regulation that municipalities have to follow. It was published in 2000, and expressly acknowledges the complexities of RF data and analysis which may be undertaken by local municipalities to determine compliance with FCC regulations, including with respect to the future deployment of wireless networks and facilities. As described in the Town's Siting Plan study (finalized in January 2007), the deployment of wireless networks and facilities has indeed resulted in complexities in determining compliance with applicable FCC regulations because the number of WTFs servicing geographic areas has increased to accommodate changing coverage and capacity needs and the newer wireless services being provided.

4. The Guide specifically acknowledges the complexity of RF issues, and the RF data gathering and analysis which may be undertaken by local municipalities to confirm compliance with FCC technical standards. The Guide further alludes to municipalities retaining RF experts to evaluate certain situations. One such complexity arises with respect to the proliferation of WTFs in a given area, resulting in more wireless facilities closer to areas of general public occupation/use. Another complexity arises when more than one antenna array is situated on a given structure ("co-location"

scenario), at different heights/configurations and transmitting at separate frequencies and power levels. Consistent with the Guide, the Clarkstown Siting Plan (and one of the driving forces of the resulting wireless ordinance revisions) acknowledges the complexities at some WTF sites respecting FCC standards compliance, along with the uncertainties associated with how wireless sites will be built in the future consistent with such standards. The Town's Wireless Law is fully consistent with the applicable FCC regulations as well as the Guide.

5. In addition, one of the "twin goals" of the FCC Guide (page 2) is: "to define and promote locally-adaptable procedures that will provide you, as a local official concerned about transmitting antenna emissions, with adequate assurance of compliance" (emphasis added).

6. Also notably, the Guide is expressly "not intended to replace OET Bulletin 65, which contains detailed technical information regarding RF issues." Note that the same FCC Bulletin 65 is what the Town's Wireless Law expressly indicates governs applicable calculations. § 251-24(G).

7. Consistent with the Guide, and its goal to define and promote "locally-adaptable procedures" (Guide page 2), the Town's Wireless Law is designed to enable and prepare the Town to monitor existing sites along with new/future sites (recognizing the anticipated industry trends) in order to ensure compliance with FCC regulations. Examples of such trends and complexities for purposes of ensuring compliance with FCC regulations include: (1) rooftop sites with 2, 3, or more facilities simultaneously operating (i.e., the same rooftops which may be occupied by persons not trained in or knowledgeable of antennas [e.g., building maintenance staff or general public], and

where uncontrolled near field exposures may occur); and (2) WTFs situated such that the antenna heights are actually at similar heights to surrounding homes due to topographic rises away from the cell site. Although possible exposures are likely to be at distance (far field) from radiating antennas in this case, the "categorical exclusion" based on 10 meter height "above ground" becomes more complex. Both cases have resulted in inquiries from municipal Board members and the public who want to confirm compliance. Inquiries related to these types of scenarios are fully consistent with the applicable FCC regulations and the FCC's Guide, and lend to legitimate concerns.

8.  Further, in my experience working for several municipalities on numerous WTF applications, safety and compliance issues are often the major source of concern and inquiry. Accordingly, it is useful to make inquiries and gather data and information upfront (including RF data), so it can be reviewed and related transparently to both the reviewing Board and the general public with respect to ensuring compliance with FCC regulations, and so that questions and concerns can be responded to objectively in accordance with the Telecommunications Act.

9.  In short, there is nothing in the Town's Siting Plan study, or the Wireless Law itself, which implies that the Town is regulating or attempting to impose regulations which are inconsistent with the FCC regulations or the FCC's Guide.

Dated: Pearl River, New York
       May __, 2008

_____
MICHAEL P. MUSSO